In the Interest of C.G., A.G., and M.G.,
Minor Children,

C.G., Mother, Appellant.

No. 88–1290.

Court of Appeals of Iowa.

May 23, 1989.

William D. Olson and Tom Lacina of Charnetski, Olson & Lacina, Grinnell, for appellant mother.

Thomas J. Miller, Atty. Gen., Kathrine S. Miller–Todd, Asst. Atty. Gen., and Charles M. Manly III, Asst. County Atty., for appellee State.

Donald Schild of Schild Law Office, Grinnell, guardian ad litem for the children.

Heard by DONIELSON, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

The mother of three children, C.G., A.G., and M.G., appeals the review order of the juvenile court denying her unsupervised visitation with C.G. and A.G. and ordering the Department of Human Services to institute termination proceedings regarding her parental rights to M.G. We affirm the decision of the juvenile court.

C.G. and A.G. were born on February 24, 1976, and February 15, 1979, respectively. They are the children of the appellant's first marriage. M.G., the half-sister of C.G. and A.G., was born on January 5, 1986. C.G. and A.G. were adjudicated Children In Need of Assistance on June 26, 1985, pursuant to Iowa Code section 232.-2(6)(c)(2). M.G. was similarly adjudicated on July 16, 1986, under Iowa Code section 232.2(6)(b) and (c)(2). C.G. and A.G. were subsequently placed with their natural father. M.G. was placed with her maternal grandmother.

The mother suffers from bi-polar mental illness manic type. She is currently being treated medically for this disorder. Her doctor testified it is under control and that she has had no psychotic episodes for two years. She was also examined by a clinical psychologist and found to have personality characteristics of impulsivity, irritability, and poor judgment distinguishable from her mental illness. The experts in this case all testified that the mother has exhibited physically-explosive personality relating to her family of origin. Additionally, all experts testified they would recommend she be given brief unsupervised visitation with one child initially and gradually work towards reunification with all three children. It is not disputed that the mother has a history of bizarre behavior stemming from both her mental illness and character disorder. The children have been either physically abused or placed in jeopardy as a result.

The juvenile court, in denying unsupervised visitation stated:

> Although the Department of Human Services joins the mental health center treatment providers for the mother in recommending unsupervised visitations by the

mother, the court is unprepared to place the children in a position of such risk as in the past led to the adjudication of the children as Children In Need of Assistance, and has occurred otherwise in connection with psychiatric episodes of threatening behavior on the mother's part. The child [M] . . . in particular, due to her tender age, remains vulnerable to exigencies that could occur either through voluntary or involuntary action on the part of the mother.[1]

Her treating physician, as well as departmental personnel, testified she has faithfully followed their advice concerning her recovery. She has also been employed as a baby-sitter for two families without incident. The impetus for her efforts continues to be her desire to be reunified with her children. She does, however, continue to have explosive episodes in the presence of her extended family. Her actions during these altercations are physically and emotionally abusive.

The children are developing well in their respective placements. The department reported that supervised visits with the child M.G. were erratic in that on some occasions the mother would exhibit interest and respond appropriately to the child's needs; on other occasions she would be lethargic and less able to respond to, supervise, and parent M.G. This, coupled with the mother's mental illness and bizarre and life-threatening conduct, prompted the court to deny her unsupervised visitation as recommended and order the department to institute termination proceedings regarding M.G.

Appellate review of proceedings to terminate a parent-child relationship is de novo— the reviewing court may review the facts as well as the law and adjudicate the parents' rights anew. *In Interest of Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). However, weight is to be accorded the findings of the juvenile court, particularly as regards the credibility of witnesses. *Id.*

Central to a determination of this nature are the best interest of the child. *Damer-*

*on*, 306 N.W.2d at 745. Those best interests are to be determined by looking at the child's long-range as well as immediate interests. *Id.* The court is to consider what the future likely holds for the child if that child is returned to his or her parents. *Id.* Insight of that determination is to be gained from evidence of the parents' past performance, for that performance may be indicative of the quality of the future care that the parent is capable of providing. *Id.* Case history records are entitled to much probative force when a parent's record is being examined. *Harter v. State*, 260 Iowa 605, 149 N.W.2d 827, 829 (1967).

■ The mother argues the district court erred in denying her unsupervised visitation with her children A.G. and C.G. She asserts Iowa Code section 232.102(6), as well as the spirit of Chapter 232 in general, implies that maximum contact between the parent and child must be provided to the extent the child will not suffer further harm. The juvenile court concluded that despite the fact that all treating professionals testified in favor of unsupervised visits, the mother's past history of psychotic episodes and continued explosive behavior all justified supervised visitation. We agree and accordingly find no error.

The mother also asserts the court erred in ordering the Department of Human Services to file a termination petition regarding her parental rights to M.G. Clearly, the juvenile court has the authority to so order the department. Iowa Code section 232.102(7) (1987) states in part:

The court shall hold a periodic dispositional review hearing for each child in placement pursuant to this section in order to determine whether the child should be returned home, an extension of the placement should be made, a permanency hearing should be held, *or a termination of the parent-child relationship proceeding should be instituted.*

(Emphasis added.)

■ As to the order complained of, we have on this date filed our ruling in *In the*

---

**1.** The mother has had several severe psychotic episodes in which the children were either injured or put in a life-threatening situation before her illness was pharmeceutically regimented.

*Interest of A.C., A Minor Child,* No. 88–1814, 443 N.W.2d 732 (1989), where we determined that such an order was not a final order and thus dismissed the appeal on our own motion. Because we determine that the basis under which a trial court can order the filing of a termination petition has not been established either by statute or court decision, and after concluding the issue is of significant concern to the bench and bar, we address the question in this part of our opinion as interlocutory and hold that before a court may order the filing of a petition terminating parental rights, it must first find from the evidence before it that there is a reasonable probability, if such evidence is left unexplained, that clear and convincing evidence exists that may warrant the termination of parental rights under section 232.116 of the Iowa Code.

 When we review the evidence in this case, we find there is a reasonable probability, if such evidence is unexplained, that clear and convincing evidence exists that may warrant the termination of parental rights. We affirm.

AFFIRMED.