660 N.W.2d 29 (2003)
In the Interest Of K.C. and S.C., Minor Children, C.C., Mother, S.C., Father, K.C., Minor Child, and Scott County Attorney, Appellants.
No. 02-1264.
Supreme Court of Iowa.
April 2, 2003.
*31 Brenda Drew-Peeples, Davenport, for appellant-mother.
Angela Fritz Reyes, Davenport, for appellant-father.
William E. Davis, County Attorney, and Gerda C. Lane, Assistant County Attorney, for appellant-Scott County Attorney.
Michael T. Hines, Davenport, for appellant-minor children.
Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant Attorney General, for State.
STREIT, Justice.
A juvenile court directed the Scott County Attorney to file a petition to initiate termination of parental rights proceedings when no involved party sought such action. We granted all parties interlocutory appeal. We find the juvenile court had authority to direct the county attorney to start termination proceedings and this power is not unconstitutional. The parents waived their due process arguments by not raising them before the juvenile court. Given the unique circumstances before us, it was error to direct the county attorney to file a petition to terminate parental rights. We reverse and remand.

I. Background and Facts
Sharquelle came to the attention of the Iowa Department of Human Services (DHS) when it received a report that her parents had abandoned her younger sister, Kyshawnda. Connie and Sylvester are the parents of Sharquelle, born in March 1999, and Kyshawnda, born September 2001. Kyshawnda was born with severe birth defects and required specialized medical care and treatment. The parents were unable to properly care for Kyshawnda and there were other domestic violence concerns. In October 2001, a temporary removal order was entered with regard to Kyshawnda. Both girls were adjudicated in need of assistance in January 2002. DHS took custody of Kyshawnda while Sharquelle remained in her mother's custody. Sharquelle was removed from her mother's custody in March 2002 and placed into foster care. The parents separated in January 2002. They each now reside in separate residences in Illinois.
Prior to a scheduled permanency hearing the parties held a staffing where they discussed issues relative to the permanency hearing. The only contested issue was whether termination of parental rights should occur as to Kyshawnda or whether her paternal aunt should be granted custody. No party at any time in these proceedings has sought termination for Sharquelle.
In August 2002, the court held a forty-five minute permanency hearing. The DHS case manager testified about Kyshawnda's situation and recommended termination of parental rights only as to Kyshawnda. The case manager testified the mother had made some progress and DHS anticipated reunification between Sharquelle and her mother would be possible in three to four months. Because the hearing had run over by fifteen minutes, the court interrupted the testimony of the case *32 manager. The mother's attorney briefly finished questioning the case manager and concluded with, "Nothing further." The judge then stated, "I will issue an opinion."
Three days later the court entered an order stating the permanency plan as to Sharquelle was not acceptable because it called for reunification. The court directed the county attorney to file a petition to terminate the parental rights of both children within thirty days. We granted the parties' petitions for interlocutory appeal. Due to complications with her medical condition, Kyshawnda died after the permanency hearing. We will address only the concerns as to Sharquelle.
The county attorney contends: (1) it cannot follow the court's order because to do so would constitute an ethical violation; (2) the statutes authorizing the court to "direct" the county attorney to file a petition to terminate parental rights unconstitutionally violate the separation of powers doctrine; (3) the same statutes constitute an unlawful delegation of authority to the judicial branch; (4) the statute only gives the court authority to "direct" not "order" the county attorney to initiate termination proceedings; (5) the county attorney cannot be compelled to initiate termination proceedings when the requisite statutory elements are not present under Iowa Code section 232.111(2)(a)(1)-(6) (2001); and (6) there is insufficient evidence to conclude there is a "reasonable probability" that the evidence before the court would warrant termination.
The parents argue: (1) the court violated their right to due process when it concluded the permanency hearing without allowing them to present evidence with respect to Sharquelle; (2) the court abused its discretion by concluding the hearing without allowing them to present evidence; (3) the court abused its discretion when it failed to grant the mother an additional six months to make reunification efforts.
The State contends the court has state and federal authority to order the county to initiate termination proceedings. Specifically, the State asserts such action does not (1) violate any ethical rules; (2) violate the separation of powers doctrine; or (3) constitute an unconstitutional delegation of powers to the judicial branch. The State joins the parents, the county attorney, and the guardian ad litem in stating, given the facts and circumstances of this case, the juvenile court should not have directed the county attorney to initiate termination proceedings. The State also concedes the juvenile court should have granted the mother additional time to pursue reunification.

II. Scope of Review
We review a permanency order de novo. In re N.M., 528 N.W.2d 94, 96 (Iowa 1995). We review both the facts and the law and adjudicate rights anew. In re H.G., 601 N.W.2d 84, 85 (Iowa 1999). Although we give weight to the juvenile court's findings of fact, we are not bound by them. In re N.M., 528 N.W.2d at 96. There is a rebuttable presumption that the child's best interests are served by parental custody. Id. The best interests of the child are paramount to our decision. Id.

III. The Merits
Our main issue on this interlocutory appeal is to determine whether the juvenile court had authority to direct the county attorney to file a petition to initiate termination proceedings.[1] If the juvenile court *33 had such authority, we must determine on our de novo review whether the juvenile court's order was appropriate under all of the facts and circumstances before us. Finally, we will address the parents' argument that their due process rights were violated when the judge concluded the permanency hearing without allowing them to testify or to present more evidence.

A. Options Available to the Juvenile Court
The county attorney challenges the juvenile court's authority to order the county attorney to initiate termination proceedings. Iowa Code section 232.58(3) provides,
After the permanency hearing, the court shall do one of the following:

a. Enter an order ... to return the child to the child's home;

b. Enter an order ... to continue [out-of-home] placement of the child; or

c. Direct the county attorney or the attorney for the child to institute proceedings to terminate the parent-child relationship.
Iowa Code § 232.58(3) (Supp.2001). Other provisions of the code indicate the juvenile court may consider, as one option, taking the initiative to institute termination proceedings. Iowa Code § 232.102(9) (2001).
The county attorney argues the word "direct" in section 232.58(3)(c) does not mean the juvenile court has authority to "order" the county attorney to initiate termination proceedings. When we interpret a statute we use, if possible, the commonly understood, everyday meanings of words. Though susceptible to a plethora of definitions, the word "direct" includes the meaning "to order or command." The American Heritage Dictionary 400 (2d college ed.1985). While "direct" may also be interpreted as a term aimed at merely guiding another's direction, such an interpretation in this instance would be contrary to legislative intent. The intent of the legislature in enacting our juvenile justice statutes was to protect a child's best interests. The legislature's grant of authority to the juvenile court to direct the initiation of termination proceedings under certain circumstances furthers a child's best interests.
The juvenile court is given a choice among three alternatives at a permanency hearing. One alternative is clearly to direct the county attorney to initiate termination proceedings. It would be nonsensical to find the juvenile court may order the first two alternatives (order the child to be returned to the home or order the child to continue out-of-home placement) but merely suggest to the county attorney a course of action as to the third alternative. See State v. Carpenter, 616 N.W.2d 540, 542 (Iowa 2000) (citing State v. Schultz, 604 N.W.2d 60, 62 (Iowa 1999)) ("In determining the intent of the legislature, we will not construe the language of a statute in a manner that will produce an absurd or impractical result.").

1. Does Iowa Code section 232.58(3)(c) violate the separation of powers doctrine or constitute an illegal delegation of authority?
The county attorney also contends the statutory language stating a court "shall direct" the institution of termination proceedings is unconstitutional. *34 Specifically, the county attorney argues this statute is a violation of the separation of powers clause of the Iowa Constitution and an unconstitutional delegation of authority to the judicial branch. Statutes are presumed constitutional and the challenger must show, beyond a reasonable doubt, the statute is unconstitutional and must negate every reasonable basis to support the statute. Johnston v. Veterans' Plaza Auth., 535 N.W.2d 131, 132 (Iowa 1995).
The court has powers conferred on it both by the constitution and by statute. The court "also possesses broad powers to do whatever is reasonably necessary to discharge [its] traditional responsibilities." State v. Hoegh, 632 N.W.2d 885, 888 (Iowa 2001) (citing Webster County Bd. of Supervisors v. Flattery, 268 N.W.2d 869, 874 (Iowa 1978)). This authority is known as inherent power, "and it is derived from the separation of powers between the three branches of government, as well as limited by it." Id. The separation of powers clause of our state constitution provides:
The powers of the government of Iowa shall be divided into three departmentsthe legislative, the executive, and the judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others ....
Iowa Const. art. III, § 1. This doctrine is designed to prevent the "encroachment and aggrandizement" of one branch at the expense of another. Channon v. United Parcel Serv., Inc., 629 N.W.2d 835, 854 (Iowa 2001). It "requires that a branch [of government] not impair another in the performance of its constitutional duties." State v. Phillips, 610 N.W.2d 840, 842 (Iowa 2000) (citing Loving v. United States, 517 U.S. 748, 757, 116 S.Ct. 1737, 1743, 135 L.Ed.2d 36, 49 (1996)).
However, "[t]he three branches of government... need not `be entirely separate and distinct.'" Channon, 629 N.W.2d at 854 (quoting Mistretta v. United States, 488 U.S. 361, 380, 109 S.Ct. 647, 659, 102 L.Ed.2d 714, 736 (1989)).
Although a state constitution may define three separate branches of power, there is generally no attempt to compartmentalize them, and perhaps, in truth, there can be no absolute and complete separation of all the powers of practical government. The powers of one department of government have always depended on or have been aided in some way by those of another. Moreover, there is sometimes an overlapping or blending of powers of separate departments.
Klouda v. Sixth Judicial Dist. Dep't of Corr. Servs., 642 N.W.2d 255, 261 (Iowa 2002) (quoting 16A Am.Jur.2d Constitutional Law § 249, at 152 (1998)). The three branches of government have "a degree of overlapping responsibility, a duty of interdependence as well as independence the absence of which `would preclude the establishment of a Nation capable of governing itself effectively.'" Id. (quoting Mistretta, 488 U.S. at 381, 109 S.Ct. at 660, 102 L.Ed.2d at 736). We join the other jurisdictions that have rejected an attempt "to narrowly and rigidly compartmentalize the exercise of executive and judicial powers" with respect to juvenile proceedings. See In re D.S., 198 Ill.2d 309, 261 Ill.Dec. 281, 763 N.E.2d 251, 258-60 (2001). Bearing in mind the separation of powers doctrine "has no rigid boundaries," we now turn to the constitutionality of Iowa Code section 232.58(3)(c). See Klouda, 642 N.W.2d at 260 (citing People v. P.H., 145 Ill.2d 209, 164 Ill.Dec. 137, 582 N.E.2d 700, 706 (1991)).
The juvenile justice system is one area in which we see a sharing of powers between *35 the executive and judicial branches. It is true the county attorney is charged with the responsibility of promoting the best interests of the child. However, under the doctrine of parens patriae, the juvenile court has a concomitant obligation to act in the best interests of the child and to take such action quickly. This obligation is also imposed upon the juvenile court by statute. Iowa Code § 232.116(2). In discharging the court's obligation, it "clearly" has inherent power to order the county attorney to file a termination petition. In re Interest of C.G., 444 N.W.2d 518, 520-21 (Iowa Ct.App.1989); accord In re Interest of J.R.T., 427 So.2d 251 (Fla.Ct.App.1983) (inherent in the court's obligation to protect the welfare of a minor child is the authority to direct the filing of petition for severance of parental rights); In re D.S., 261 Ill.Dec. 281, 763 N.E.2d at 251 (court's statutory duty to effectuate the best interests of a child may be satisfied by directing the state to prosecute a termination petition and such authority does not violate separation of powers); Phelps v. Sybinsky, 736 N.E.2d 809 (Ind.Ct.App.2000) (in the interest of promoting a child's welfare, the court has authority to direct county attorney to initiate termination proceedings and this authority does not violate separation of powers); In re Interest of D.G.C., 690 So.2d 237 (La. 1997) (court has authority to order the state, the district attorney or DHS, depending upon the circumstances, to institute termination proceedings); In re Interest of V.R., 725 So.2d 241 (Miss. 1998) (the court retains power to direct DHS to initiate termination proceedings regardless of the parents' compliance with the court's requirements); In re G.S., 731 S.W.2d 525 (Mo.Ct.App. 1987) (court has statutory authority to order a juvenile officer to file a petition to terminate parental rights). The court's powers under the juvenile justice statutes are designed to effectuate the best interests of the child which may not necessarily be the same as what the parties are advocating.
Some acts can be properly entrusted to more than one branch of government. Hoegh, 632 N.W.2d at 889. The purpose behind delegating authority to both the court and the county attorney to promote a child's best interests is clear. A juvenile court's objective to look after the child's welfare would be compromised if the court did not have the power to direct the county attorney to file a termination petition. Under certain circumstances, the juvenile court can promote the interests of the child only if it is authorized to order the county attorneyeven if against the attorney's wishesto initiate termination proceedings. See In re D.S., 261 Ill.Dec. 281, 763 N.E.2d at 261-62; In re Interest of T.T., 427 So.2d at 1384. Because both the county attorney and the juvenile court are entrusted to act in the best interests of the child, the court's action in this capacity does not conflict with the duties of the executive branch. Id. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." In re A.C., 415 N.W.2d 609, 613 (Iowa 1987). "Children should not be made to suffer indefinitely in parentless limbo." Id. Where appropriate, the juvenile court has authority to prevent exactly this situation by directing the county attorney to initiate termination proceedings. To hold only the county attorney can decide which facts and circumstances justify the filing of a petition to terminate parental rights would be an ultimate frustration and restriction on the juvenile court's duty to promote the best interests of a child. See In re Interest of J.R.T., 427 So.2d at 253.
In sum, pursuant to Iowa Code section 232.58(3)(c), the juvenile court has authority to direct the county attorney to initiate termination proceedings. In the interests *36 of a child, the doctrine of separation of powers is not violated because "separate spheres of governmental authority may overlap." See In re D.S., 261 Ill.Dec. 281, 763 N.E.2d at 258. This does no violence to our state constitution because the statute does not effectively allow the judicial branch to encroach upon or aggrandize itself at the expense of the executive branch. See Channon, 629 N.W.2d at 854. Rather, the statute is constitutionally designed to allow the judicial and executive branches to share the same responsibility thereby ensuring the best interests of a child.

2. Is it unethical for the county attorney to file a termination petition if she does not support such action?
The county attorney contends that it would be unethical to file a termination petition when the attorney does not support such action. Under this same reasoning, the county attorney would similarly be put in an unethical position to prosecute a criminal case if the attorney personally disagrees with the law. Certainly, one could argue a county attorney is put in a difficult position when asked to pursue a course of action the attorney does not believe is in the best interests of the child. In such cases, a county attorney would be required to prosecute a case the attorney has been opposed to throughout the entire proceedings. The legislature certainly contemplated such situations, though rare, when the juvenile court and county attorney do not agree on the way to handle a particular case. This is, in fact, the primary purpose behind the court's authority to direct the county attorney to initiate termination proceedings. This mechanism provided by the Iowa Code is necessary to prevent children from slipping through the cracks of a CINA action.
Our rules of professional conduct provide an attorney shall not "[k]nowingly advance a claim or defense that is unwarranted under existing law, except that a lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law." Iowa Code Prof'l Resp. DR 7-102(A)(2). Any potential ethical conflicts facing the county attorney are remedied by the juvenile court's direction to initiate termination proceedings. See Phelps, 736 N.E.2d at 817 (county attorney does not bring a frivolous action when he or she complies with the court's order to file a termination petition because court is requiring attorney to bring the issue to the court for a judicial determination of the child's best interests). That is, the county attorney's good faith basis for prosecuting a termination stems from the court's order. When the county attorney takes action in compliance with the juvenile court, such action would not be deemed to be unwarranted for lack of a good faith basis. See In re D.S., 261 Ill.Dec. 281, 763 N.E.2d at 261 ("Actions on the part of the State in compliance with an order of the circuit court would not be deemed `frivolous.'").
Because we have found the juvenile court has authority to direct the county attorney to file a petition to terminate parental rights and such authority is constitutional, we now turn to whether the court's order was appropriate under all of the facts and circumstances of this case.

B. Determination of Reasonable Progress
The issue of central importance is whether the evidence before us supports the conclusion that an order to the county attorney to file a petition to terminate parental rights was appropriate. The standard a court must satisfy in order to exercise this option is found in Iowa Code *37 section 232.104(1)(c). This section provides at the permanency hearing, "the court shall also make a determination as to whether reasonable progress is being made in achieving the permanency goal and complying with the other provisions of that permanency plan." Iowa Code § 232.104(1)(c) (emphasis added). All of the parties agree the evidence shows the mother was making reasonable progress toward reunification at the time of the permanency hearing.
In this case, Sharquelle's parents have shown chronic issues of domestic violence. The mother has appeared, at times, disinterested in the process of reunification. She has had difficulty in appropriately disciplining Sharquelle. Though she was learning some new parenting techniques, DHS stated the mother was not using them in her interactions with Sharquelle. The mother moved to Illinois to be with her new boyfriend; she would not provide any information to DHS about her boyfriend.
There was also positive evidence supporting reunification. At the time of the permanency hearing, the mother had had only five months to work on the goals of the case permanency plan. During that time, the mother's participation was not perfect, though DHS stated she continued to make progress. In June 2002, DHS stated the mother "has been responsive to the parenting services although she feels that she does not need this type of education." At that time, the case permanency plan still indicated services would be provided to the mother focusing their efforts on reunification. Though the mother had moved to Illinois, she was maintaining contact with Sharquelle and DHS. She was participating in the Batterer's Education Program. The DHS case manager stated reunification between Sharquelle and her mother would be possible within three to four months.
Before reunification would be possible, DHS stated the mother would need to accomplish several other things. She needed to "stabilize her living arrangement." As of the permanency hearing, the mother stated she was moving to Illinois but yet she had not moved into the home where she said she would be. DHS also stated the mother must continue to comply with the parenting services. DHS recommended unsupervised time and possibly overnights with Sharquelle and her mother. Despite evidence to the contrary, the juvenile court stated,
The Court can only conclude that [the mother's] efforts and attitude are marginal to say the least and only when it's a matter of her convenience. Now with her moving to Galesburg, this is one more hindrance to her resolving her problems and becoming an effective parent. Based upon her past actions and the fact that she can't even put forth effort in the face of a deadline, it is established that reasonable efforts at reunification have been made and failed. The Court feels that termination of parental rights is appropriate.
Given the mother's prior record of inconsistent participation in services and seeming lack of interest in learning new parenting skills, it is easy to see the juvenile court's frustration in this case. However, the above evidence does not support a finding that the mother was not making reasonable progress toward achieving the goals of the permanency plan.
Even though there is evidence supporting the juvenile court's action, under all of the facts and circumstances, we conclude the mother was making "reasonable progress" toward achieving the permanency goal pursuant to Iowa Code section 232.104(1)(c). See In re C.G., 444 N.W.2d *38 at 521 (juvenile court must determine whether "there is a reasonable probability, if such evidence is left unexplained, that clear and convincing evidence exists that may warrant the termination of parental rights under section 232.116 of the Iowa Code"). In light of the mother's progress in rectifying her parental deficiencies, the county attorney, the guardian ad litem, the father's attorney, and the state attorney general at the appellate level have all advocated allowing the mother six more months to pursue reunification. In sum, given the circumstances of this case, it was error to direct the initiation of termination proceedings. We reverse.

C. Due Process Challenge
The parents also argue they were denied due process when the juvenile court concluded the permanency hearing without allowing them to present more evidence and to testify. Certainly, the juvenile court is obligated to follow the procedures outlined in Iowa Code section 232.104 directing the course of a permanency hearing. The parents, however, waived this argument by failing to object at the closing of the hearing.
When the court announced its intention to conclude the hearing because the parties had exceeded the allotted time, the mother's attorney briefly continued her cross-examination. However, the attorney finished stating, "Nothing further." No one present at the hearing objected to ending the hearing or requested a continuance. Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal. State v. Biddle, 652 N.W.2d 191, 203 (Iowa 2002) (citing State v. Kinkead, 570 N.W.2d 97, 102 (1997)). Because the parents did not lodge an objection alerting the juvenile court to their complaints, they have not preserved error for our review.

IV. Conclusion
The juvenile court had statutory authority to direct the county attorney to file a petition to terminate parental rights. This statute does not violate the doctrine of separation of powers and does not require the county attorney to violate any ethical canons. Because of the circumstances of this case, it was error to direct the county attorney to file a termination petition. We reverse and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] The assistant county attorney suggests the central issue on appeal is whether she is required to file a petition to terminate parental rights when none of the circumstances listed in Iowa Code section 232.111(2)(a) are present. However, this argument is not directly on point because section 232.111 articulates the circumstances under which the county attorney may take the initiative to file a petition to terminate parental rights. This is not the issue before us. Rather, we are called upon to determine whether Iowa Code section 232.104(2)(c) permits a juvenile court to direct the county attorney to initiate termination proceedings. As such, we will not discuss the force of section 232.111.