**IN THE COURT OF APPEALS OF IOWA**

No. 15-1225
Filed October 14, 2015

**IN THE INTEREST OF L.Y.,**
   **Minor Child,**

**M.C., Mother,**
   Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mark Fowler, District Associate Judge.

A mother appeals from a juvenile court's permanency review order that continued placement of her son with his father. **AFFIRMED.**

Steven W. Stickle of Stickle Law Firm, P.L.C., Davenport, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Michael J. Walton, County Attorney, and Julie Walton, Assistant County Attorney, for appellee.

Barbara E. Maness, Davenport, for father.

Micki M. Mayes of Micki M. Mayes Law Firm, Davenport, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., Mullins and Bower, JJ.

**MULLINS, Judge.**

A mother appeals from the permanency review order that continued placement of her son with his father. She contends the State failed to prove by clear and convincing evidence that reasonable efforts had been made toward reunification and the child could not be returned to her care.

**I.      Background Facts and Proceedings**

The mother has one son, L.Y., born in April 2014. The mother has a learning disability and both the mother and father have low IQs. L.Y. has been in the care of his father since he was a few weeks old when the mother became frustrated and left L.Y. with the father and went home where she lived with her own father. The father lives with his grandmother and both share in the care of L.Y. Both the mother and the father have the benefit of family support.

In June 2014, the State filed a child-in-need-of-assistance (CINA) petition and L.Y. was removed from his mother's care and placed with his father.[1] In July 2014, the juvenile court adjudicated L.Y. a CINA. In August and November 2014, the juvenile court held dispositional and dispositional review hearings at which it confirmed the CINA adjudication and placement with the father. In April and June 2015, the court held permanency and permanency review hearings. In its permanency review order entered in July 2015, the juvenile court continued the placement of L.Y. with his father. This appeal followed.

---

[1] At the time of the removal the father's status was as putative father, thus requiring a removal order to place L.Y. with him. Subsequent paternity testing established his status as L.Y.'s biological father.

## II.    Standard of Review

We review permanency orders de novo.  *In re K.C.*, 660 N.W.2d 29, 32 (Iowa 2003).  We review both the facts and the law and adjudicate rights anew. *Id.*  We give weight to the juvenile court's factual findings, but are not bound by them.  *Id.*  "The best interests of the child are paramount to our decision."  *Id.*

## III.    Analysis

The mother argues the State failed to prove by clear and convincing evidence that reasonable efforts toward reunification have been made.[2] Specifically, she contends the Iowa Department of Human Services (DHS) impeded ongoing reunification efforts by refusing to offer her additional overnight visits even though the court had previously ordered that the mother have visits increased to overnight and that she demonstrate successful visits without others intervening.

Following removal of the child from a parent's care and custody, the State must make reasonable efforts to reunify the family as quickly as possible.  Iowa Code § 232.102(7) (2013).  "The focus [of reasonable efforts] is on services to improve parenting.  However, it also includes visitation designed to facilitate reunification while providing adequate protection for the child."  *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (citation omitted).  We find DHS provided the mother with overnight visits as ordered by the juvenile court, even though it did not provide her additional overnight visits to take place without her father present

---

[2]  The State argues the mother failed to preserve error on this issue and that even if error is preserved, DHS engaged in reasonable efforts to reunify the mother with her son.  We assume without deciding that the mother preserved error and reach the issue.

in the home. "[T]he nature and extent of visitation is always controlled by the best interests of the child." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa 1996). The DHS social worker testified that the mother is able to care for L.Y. in small increments but reserved concerns regarding any long-term care of L.Y. by the mother, acknowledging that she becomes frustrated easily, has difficulty problem-solving to meet L.Y.'s needs, and repeatedly needs direction or prompting when caring for L.Y. She stated that there had been times when the mother had asked to have a visit cancelled or cut short and return L.Y. to his father because she was frustrated. We find it was in L.Y.'s best interests that overnights were restricted to occur only when the mother's father could be present for the visit. Thus, we find DHS made reasonable efforts to reunify the mother with L.Y.

The mother also argues the State failed to prove by clear and convincing evidence that L.Y. could not be returned to her care. The mother points out that both the DHS worker and Family Safety, Risk, and Permanency Services (FSRP) provider testified that there were no safety concerns regarding the mother's care for L.Y., she complied with the case plan requirements, she was able to physically care for him, and her home was clean and appropriate. The DHS social worker testified that L.Y. is bonded with his mother and that he is thriving with her, and commended the mother for seeking assistance when she required it. The guardian ad litem (GAL) recommended that DHS continue to work with the mother toward reunification with the child.

Following a permanency hearing, a juvenile court has four options:

      a. Enter an order pursuant to section 232.102 to return the child to the child's home.

      b. Enter an order pursuant to section 232.102 to continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.

      c. Direct the county attorney or the attorney for the child to institute proceedings to terminate the parent-child relationship.

      d. Enter an order . . . to . . .

    . . . .

      (2) [t]ransfer sole custody of the child from one parent to another parent.

Iowa Code § 232.104(2). But prior to entering a permanency order under section 232.104(2)(d), the State must establish by convincing evidence that

      a. A termination of the parent-child relationship would not be in the best interest of the child.

      b. Services were offered to the child's family to correct the situation which led to the child's removal from the home.

      c. The child cannot be returned to the child's home.

*Id.* § 232.104(3).

Both the DHS worker and the GAL stated that this was a difficult case. Both parents love L.Y. and want to care for him. Both parents need assistance in caring for L.Y. and both have family who want and are willing to assist in providing care for him. The juvenile court found that at the time of the hearing, and considering L.Y.'s need for permanency and stability, the father was better suited to caring for him. L.Y. had been in his father's care since he was a few weeks old. Although the court shared its concern that L.Y.'s paternal great-grandmother is his main caregiver, it found there have been no major concerns regarding safety or otherwise while in his father's care. The father has continued

to reside in the same home and is able to provide a stable environment for L.Y. The juvenile court considered that the father had refused to participate in parenting programs while the mother had complied, but both DHS and the FSRP provider testified that neither had concerns regarding the father's parenting, the classes were only requested of him to enhance his ability to care for L.Y. as he grows and develops.

The court recognized the mother had made some progress in caring for L.Y. but noted its concern regarding her stability and ability to provide care for him long term. She does not have coping skills that she can use to calm herself when she is presented with a conflict, instead, she panics and is unable to think rationally or problem solve. The FSRP provider testified to a recent incident when L.Y. was at his mother's home for an overnight visit and the mother did not have necessary first aid items to care for him when he became ill. The DHS worker testified that additional time to work toward reunification would not enable the mother to provide for L.Y.'s health, safety, and welfare. Further, while the mother appears to have continued to reside with her father since L.Y.'s birth (outside of a month she spent residing with L.Y.'s father and his family immediately following his birth), she planned to move from her father's home with her current fiancé because they were expecting a child together.

Thus, upon our de novo review, we find the record contains clear and convincing evidence that L.Y. could not be returned to his mother's care and that DHS made reasonable efforts toward reunification between the mother and L.Y.

**AFFIRMED.**