**IN THE COURT OF APPEALS OF IOWA**

No. 16-0108
Filed March 23, 2016

**IN THE INTEREST OF R.H.,**
**Minor Child,**

**MARTHA SIBBEL, Guardian ad Litem,**
    Appellant/Cross-Appellee,

vs.

**H.H., Father,**
    Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Crawford County, Mary L. Timko,

Associate Juvenile Judge.


        The guardian ad litem for a minor child adjudicated in need of assistance

appeals from a permanency order granting the father six additional months.

**AFFIRMED.**


        Martha A. Sibbel of Law Office of Martha Sibbel, P.L.C., Carroll, attorney

and guardian ad litem for minor child, R.H., appellant/cross-appellee.

        George C. Blazek of Franck & Sextro, P.L.C., Denison, for father

appellee/cross-appellant.

        Thomas J. Miller, Attorney General, and Janet L. Hoffman and Mary A.

Triick, Assistant Attorneys General, for State.


        Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

The guardian ad litem (GAL) for seven-year-old R.H., a minor child adjudicated in need of assistance, appeals from the juvenile court's permanency order granting the father six additional months to work toward reunification with his child.[1] We review permanency orders de novo.[2] *In re K.C.*, 660 N.W.2d 29, 32 (Iowa 2003). "We review both the facts and the law and adjudicate rights anew." *Id.* We give weight to the juvenile court's factual findings, but we are not bound by them. *Id.* "The best interests of the child are paramount to our decision." *Id.*

The GAL argues the juvenile court erred in entering a permanency order granting the father an additional six months under Iowa Code section 232.104(2)(b) (2013),[3] and instead, should have ordered that guardianship and

---

[1] The father filed a notice of cross-appeal stating he was cross-appealing the portions of the juvenile court's order adverse to him, which denied his motion to modify dispositional order and entered a permanency order that provided custody of the child would remain with the Iowa Department of Human Services. The father did not make any of these arguments in his response to the GAL's petition on appeal. Therefore, his claims are waived. *See Aluminum Co. of Am. v. Musal*, 622 N.W.2d 476, 479–80 (Iowa 2001) ("Issues not raised in the appellate briefs cannot be considered by the reviewing court."); *see also Hubby v. State*, 331 N.W.2d 690, 694 (Iowa 1983) ("[I]ssues are deemed waived or abandoned when they are not stated on appeal by brief . . . .")).

[2] The father asserts in his response that we should review the juvenile court's decision granting him an additional six months for an abuse of discretion. In an unpublished case of our court, we held that "[w]e review the court's decision whether to grant or deny additional time for an abuse of discretion." *In re C.B., Jr.*, No. 09-0782, 2009 WL 2170358, at *1 (Iowa Ct. App. July 22, 2009). Our supreme court subsequently held in *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010), that "the proper standard of review for all termination decisions should be de novo." We need not decide today whether a decision to grant a six-month extension under Iowa Code section 232.104(2)(b) is subject only to de novo review or whether the previously-applied abuse-of-discretion standard also comes into play. Under either standard, we conclude the juvenile court should be affirmed here.

[3] Following a permanency hearing, the juvenile court may

> Enter an order pursuant to section 232.102 to continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order

custody of the child be transferred to his maternal grandparents pursuant to section 232.104(2)(d)(1).[4] The GAL contends a guardianship with his maternal grandparents is in the child's best interests because it will provide him with permanency, consistency, and stability, and allow him to maintain contact with his mother.[5]

We have carefully reviewed the record, the briefs of the parties, and the juvenile court's lengthy, fact-intensive, and thorough ruling. In its order, the juvenile court found the child could not be returned to his mother, with whom he had lived prior to his removal, due to the domestic violence he had witnessed while in her care and that was still ongoing. Next, the court determined the child could not be placed with his father at that time because "[t]he relationship has been developing but not progressed to the point that the Court feels [the child] would be emotionally and mentally safe if placed with [the father] away from his grandparents and mother." The court noted it "ha[d] serious concerns about [the father's] ability to follow through and allowing [the child] contact with his

---

> entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.

Iowa Code § 232.104(2)(b).

[4] Iowa Code section 232.104(2)(d)(1) provides that, following a permanency hearing, the court may enter an order "[t]ransfer[ring] guardianship and custody of the child to a suitable person," after first determining under section 232.104(3) that convincing evidence exists that (1) termination of parental rights is not in the child's best interests; (2) "[s]ervices were offered to the child's family to correct the situation which led to the child's removal from the home"; and (3) "[t]he child cannot be returned to the child's home."

[5] At the permanency hearing, the State supported transferring guardianship and custody of the child to the maternal grandparents. The State did not file an appeal of the juvenile court's permanency order and declined to offer any additional arguments in its statement to the court.

grandparents and [the mother] as well as [the father's] ability to be honest about [the child]'s stability while in his care."

The court then considered its available options and concluded,

> At this point in the case, [the child]'s best interest appears to lie with his grandparents, at least for the short term. [The grandparents] have been his home base for more than half of his life, either with or without [the mother] in the home. [They] have provided financially, emotionally, and physically for him. *At this point, the Court can find no compelling reason allowed within the Child in Need of Assistance procedures to disrupt this relationship; however, the concern regarding the grandparents' ability to protect [the child] is very real.* They testified that they will keep [the child] safe from contact with [the mother's abusive live-in boyfriend]. On the other hand, they tend to believe [the mother] when she says that she will have no contact with [her boyfriend] or will not expose [the child] to him. This may seem like a small issue, but it is not. [The grandparents] were aware of [the mother]'s abusive relationship with [her boyfriend] and her significant drug abuse/usage. Despite this, they allowed [the child] to reside with her on numerous occasions. Further, they were aware of the violence and dysfunction to which [the child] was exposed, which led to his removal in the first place, yet they let [him] go back with [the mother] to [her boyfriend's home] right after that removal and they did not tell anyone. They testified that they were unaware that [the child] saw [the mother's boyfriend] every morning when [the grandmother] dropped [the child] off with [the mother]. Allegedly, no one knew [the child] was having that contact with [the mother] until [she] was pregnant. It is difficult to believe that [the child] never brought up the fact that [the mother's boyfriend] was in the home in the mornings given that [the grandparents] allegedly saw [the child] every evening.
>
> Finally, the Court considers [the child]'s age. He is very young. The Court is concerned about establishing a guardianship with such a young child. This is not an option out of the realm of possibility; however, given the Court's rebuttable preference for placement with a non-custodial parent,[6] the Court, looking at what [the father] has attempted to do within the last few months, finds that [he] should be given an additional six months to work toward rectifying the situation that led to [the child] not being placed with him following the removal of [the child] from his mother's care.

---

[6] *See In re N.M.*, 491 N.W.2d 153, 156 (Iowa 1992) ("We afford a rebuttable presumption that the best interest of a child is served when custody is with the natural parents.").

Additionally, the court listed "the specific factors, conditions, or expected behavioral changes" the father needs to address in the interim in order for the court to determine "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."  Iowa Code § 232.104(2)(b).

On our review, we agree with the juvenile court that a grant of an additional six months for the father to work toward reunification is in the child's best interests and affirm pursuant to Iowa Court Rule 21.26(1)(a), (b), (d), and (e).

**AFFIRMED.**