# IN THE COURT OF APPEALS OF IOWA

No. 25-1214
Filed December 3, 2025

IN THE INTEREST OF K.P. and L.P.,
Minor Children,

A.W., Mother.,
Appellant.

_____

Appeal from the Iowa District Court for Polk County, Erik I. Howe, Judge.

A mother appeals the juvenile court's order terminating her parental rights to two children. **AFFIRMED.**

Gina E.V. Burress of Carr Law Firm, P.L.C., Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Felicia Bertin Rocha, Urbandale, attorney and guardian ad litem for minor children.

Considered without oral argument by Ahlers, P.J., Badding, J., and Mullins, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**MULLINS, Senior Judge.**

A mother appeals the termination of her parental rights to her two daughters—born in 2020 and 2021—under Iowa Code section 232.116(1)(f) and (h) (2025). She challenges the sufficiency of the evidence supporting the grounds for termination, emphasizing her recovery from the substance-use problems that gave rise to these proceedings. She also contends termination is not in the girls' best interests.

We do not discount the mother's success in maintaining her sobriety. But as her parental shortcomings changed over time, so did the expectations for improvement. On our de novo review, we find that the mother remained unable to meet all her children's needs at the time of termination. We also agree with the juvenile court's conclusion that termination is in the best interests of these girls.

## I. Background Facts and Proceedings

The Department of Health and Human Services first became involved with this family in December 2021, when the younger of the two girls at issue was born with THC in her system. Not long after that, case workers learned that the mother and her paramour—who is both girls' father[1]—were also using methamphetamine. A safety plan was installed, and the parents cooperated with department interventions. They showed progress in their sobriety over the following year, during which time the girls and their two older brothers remained in the

---

[1] The juvenile court also terminated the father's parental rights to K.P. and L.P. Because the father does not appeal, we discuss him only to the extent it is relevant to the mother.

home.[2]  But by January 2023, the mother and father had fallen back into substance use.  Hair from both girls tested positive for methamphetamine.  All four children were removed from their parents' custody and declared children in need of assistance.

The mother set to work correcting her course.  She successfully discharged from outpatient treatment and joined a support group.  She also participated in a mental-health evaluation and attended a few sessions of individual therapy.  Her last positive test for methamphetamine was July 27, 2023.  However, she continued to test positive for THC.  Meanwhile, the girls remained in a foster home, separate from their brothers.  The mother had two fully-supervised visits with the children per week.

In February 2024, the department recommended that the State seek termination of parental rights for the youngest three children, citing both parents' ongoing substance use and lingering mental health concerns.  Around the same time, the mother's THC tests began to come back negative.  Following a permanency hearing in March 2024, the juvenile court entered an order directing the department to begin providing additional visitation and to reduce the level of supervision.  It simultaneously changed the permanency goal to termination.  The court would later explain that the purpose of this approach was to address the "extensive length of time the case had been open" while providing the parents a chance to address some "general parenting concerns" that had also been identified

---

[2] The mother's two sons—born in 2008 and 2019—were also at issue in the child-in-need-of-assistance proceedings giving rise to this case.  For simplicity, we refer to both older children as the girls' brothers, even though the older boy does not share the same father.

by the department. The State filed a petition to terminate the parents' rights pursuant to Iowa Code section 232.116(1)(f) and (h), which was heard in June.

The transcript from the June 2024 termination hearing is not a part of the record in this appeal. However, the juvenile court would later note that "[t]here remained little ongoing concern regarding substance use for either parent" at the time of the hearing. Instead, the focus shifted to "basic parenting issues," which the court described as "somewhat minor" by comparison. It denied termination an August 2024 order, granting a six-month extension for the mother and father to demonstrate their parental abilities.

Over the next few months, the parents made strides toward reunification. Reports from that period applaud their increased responsibility, including the mother's role in managing appointments and transporting the children to activities. Soon, the parties began planning to transition all four children back into the home. Trial placements for the brothers began in September 2024, and the girls began an extended home visit in December.

Unfortunately, the family was not reunited for long. On December 17, 2024, a domestic dispute erupted in the presence of the children, and the father threatened to harm the mother in her sleep. The father was arrested after the oldest child called 911. During the father's incarceration, the mother struggled to care for the children on her own. She relied heavily on the girls' foster parents for overnight and weekend relief. And in early January, caregivers and service providers began reporting concerns about the children's supervision, the cleanliness of the home, and the mother's personal hygiene. For instance, during a mid-afternoon scheduled visit, a family-centered services worker was greeted at

the door by K.P. (age four), who reported that her mother was asleep and that neither she nor her brother (age five) had received their lunch.

At a January 7 emergency meeting with the mother and her attorney, the department identified several concerns that would need to be immediately addressed to maintain the girls' trial placement, including "safe supervision of the children," "safety locks and cleanliness in the home," "regular meals," and "family hygiene." But when the time came for a follow-up visit three days later, the mother had yet to take action. K.P. told the service provider that she had not eaten breakfast that day. A child lock had not been installed on the front door. The mother was struggling with an open leg wound that "drain[ed] down her leg into her sock."[3] And the apartment was so foul-smelling that the provider had to change her clothes following the visit.

On January 14, the department ended the girls' trial placement and returned them to foster care. It did not remove the boys. Despite noting "significant concerns" as to their continued placement with the mother, the department concluded "that parenting two children, rather than all four, will be more manageable for [the mother]." The guardian ad litem was "reservedly in agreement" with the six-year-old boy continuing in the mother's care. A few weeks later, the mother filed a motion to compel the girls' return, alleging the department "had never mentioned" the cleanliness, nutrition, and family-hygiene concerns until a week before their removal. While that request remained pending, the State filed a new petition to terminate the mother's parental rights to K.P. and L.P.

---

[3] The mother would later be hospitalized for several days after multiple prompts by case workers to seek medical attention for her wound.

A second termination hearing was held in May 2025. The case manager testified that, during the intervening months, the mother had stopped attending appointments for the girls. She also lost her job. At the time of the hearing, she had been searching for work for more than two months while living off a tax refund and state benefits.[4] The case manager also acknowledged that her ongoing custody of the older boys raised a "difficult question." In response, the mother argued that although she had faced "one thing after another after another after another since December," she had never failed to respond to the department's recommendations. Throughout her testimony, she expressed frustration with the department's evolving expectations, reminding the court that she had been "methamphetamine-free for two years and marijuana-free for a year."

In a thoughtful written order, the juvenile court concluded that the "basic parenting issues" raised in the previous termination hearing had only become "more pronounced" following a year of additional services. Finding the State had shown by clear and convincing evidence that the girls could not at the time of the hearing be returned to their mother's custody, it terminated the mother's parental rights. The mother appeals.

## II. Discussion

We review termination proceedings de novo, following a three-step analysis under Iowa Code section 232.116. *In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018). The first question is whether the State has established a statutory ground

---

[4] Notably, the mother used her April tax refund to buy some clothing for the children as well as a big-screen television. She explained at the hearing, "I also worked for that money, so I see no reason why I can't spend a little bit of it on myself."

for termination. *Id.* If so, we must ask whether termination is in the child's best interest. *Id.* at 473. Finally, we consider whether the parent has proved an exception to termination under section 232.116(3). *Id.* at 473, 476. Here, the mother challenges the juvenile court's findings at steps one and two. We confine our discussion to those issues.[5] *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

### A. Grounds for Termination

The juvenile court found the State proved a statutory ground for termination under Iowa Code section 232.116(1), paragraphs "f" (as to K.P.) and "h" (as to L.P.). Paragraph "f" permits termination of parental rights where the following elements are established by clear and convincing evidence:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f). Paragraph "h" provides for termination on nearly identical grounds, except that it applies to younger children who have been

---

[5] To be sure, the mother's petition on appeal cites Iowa Code section 232.116(3)(c) in support of her claim that termination is "not in the children's best interests." But following the mother's lead, we consider her emotional-bond argument under the best-interests framework alone. *See In re L.A.*, 20 N.W.3d 529, 534–35 & n.2 (Iowa Ct. App. 2025). We also decline to address the mother's cursory assertion that termination violates her due process and equal protection rights, as that claim was neither raised nor decided in the juvenile court proceedings. *See In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal.").

removed for a shorter period of time.  The court must find:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

*Id.* § 232.116(1)(h).

The mother concedes that the age, adjudication, and length-of-removal elements of paragraphs "f" and "h" are satisfied for both girls.  But she disputes the juvenile court's conclusion that they could not be returned to her custody at the time of the termination hearing.  *See In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021) (interpreting the words "present time" to mean "the time of the termination hearing").  According to the mother, her ongoing sobriety showcases her commitment to providing a safe environment for her children.  And although she acknowledges "her progress might not have proceeded at the ideal pace," the mother contends that the concerns about the safety and cleanliness of her home were substantially resolved in the months leading up to the hearing.

We do not discount the mother's efforts.  Undeniably, she overcame the significant problem that first brought her family to the attention of the department. The juvenile court acknowledged as much when it denied termination in 2024 and provided the mother with a second chance at reunification.  But as time would show, substance use was not her only barrier to successful parenting.  After the father was arrested, the mother struggled to meet the essential needs of all four

children. She attributed that shortfall to a temporary loss of motivation, testifying: "I can't be sad about it in front of my kids, but the dishes are still going to be there tomorrow." We reject the analogy. Unlike dirty dishes, the health, supervision, and nourishment of young children cannot be put off for a more convenient time. *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable.").

We recognize that, by the time of the termination hearing, the mother had fixed several of the discrete safety and hygienic problems that required the girls' re-removal in January 2025. Yet, with the resolution of those issues came new hurdles in the mother's employment and personal finances, demonstrating to us that her cycle of instability continues. The case manager described this family as "the longest ongoing case I have managed in my time at HHS." Despite nearly four years of department services, the mother has not been able to provide a safe and stable home for these two girls while also caring for her two boys. Our statutory scheme does not contemplate such lengthy intervention. *See A.B.*, 956 N.W.2d at 169 ("The legislature has established a limited time frame for parents to demonstrate their ability to be parents." (cleaned up)). The mother's argument concerning proof of her commitment to progress has not evolved to evidence of sufficient actual progress. We agree with the juvenile court that the State proved the statutory requirements for termination under Iowa Code section 232.116(1)(f) and (h).

## B. Best Interests

We turn to the question of the children's best interests, which is our primary concern in every termination case. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).

When deciding what outcome will serve those interests, we consider a child's safety, their long-term nurturing and growth, and their physical, mental, and emotional needs. Iowa Code § 232.116(2). To that end, a parent's past performance "may be indicative of the quality of the future care that parent is capable of providing." *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (citation omitted). For children in foster placements, we also consider their integration in their new environment, Iowa Code § 232.116(2)(b), mindful that the "need for a permanent home" is an essential factor in the best-interests inquiry, *see In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

The mother contends that termination was not in the girls' best interests due to the strength of their relationship with the mother and the detrimental impact of severing that bond. We question this argument from its starting premise. K.P. has resided with her current foster family since February 2023. L.P. has shared the same placement since October 2023. Even during their short-lived trial home visit, both girls continued to receive overnight and weekend foster care. At this point, the girls have lived with their foster parents longer than they lived with their mother. During a visit at the mother's home in January 2025, K.P. asked a service provider when her "mom and dad" would come to pick her up and take her home, referring to her foster family. Simply put, it is not clear from the record that the girls share the strong emotional attachment their mother asserts.

But even giving the mother the benefit of the doubt, we still cannot conclude that the emotional hardship of termination outweighs the girls' long-term need for constant and capable parenting. They have enjoyed a stable, nurturing

environment in their foster placement, which is pre-adoptive.[6]  By contrast, attempts to preserve the mother's rights have only served to delay permanency. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."  *P.L.*, 778 N.W.2d at 41.  The juvenile court correctly concluded that termination of parental rights is in the best interests of these children.

## III. Conclusion

On our de novo review of the record, we find clear and convincing evidence that these girls could not be returned to their mother's custody at the time of the termination hearing and that termination was in their best interests.  We therefore affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED.**

---

[6] We acknowledge the fact that the girls are not placed with their older brothers. Although we have said that "wherever possible brothers and sisters should be kept together," each child's best interests remain "the paramount concern."  *In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994).  Here, the guardian ad litem opined that the benefits of termination outweighed the detriments of separating the girls from their brothers.  We agree, noting the record reflects concerns by some caregivers that the younger boy's behaviors have been harmful to the girls.