# IN THE COURT OF APPEALS OF IOWA

No. 24-1873
Filed December 17, 2025

**IOWA DEPARTMENT OF HEALTH AND HUMAN SERVICES,**
    Plaintiff,

**vs.**

**IOWA DISTRICT COURT FOR FLOYD COUNTY,**
    Defendant.
_____

Certiorari to the Iowa District Court for Floyd County, Karen Kaufman Salic, Judge.

The Iowa Department of Health and Human Services challenges a juvenile court order compelling it to facilitate and cover the cost of a father's sex-offender treatment during a child-in-need-of-assistance proceeding. **WRIT ANNULLED.**

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for plaintiff.

Danielle M. Ellingson of Noah, Smith, Sloter & Ellingson PLC, Charles City, for defendant.

Matthew DeJong, Rochester, Minnesota, and Elizabeth Wayne (until withdrawal), Parkersburg, attorneys and guardians ad litem for minor child.

Considered without oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**LANGHOLZ, Judge.**

The father in a child-in-need-of-assistance case was barred from visiting his daughter until he completed sex-offender treatment. But after months of searching for those services, the Iowa Department of Health and Human Services could not locate an affordable program, and the father's progress toward reunification thus stalled. During a routine review hearing, the father's attorney questioned whether the Department could cover the cost of the father's treatment. The Department's only statements on the matter came from its assigned social worker, who testified that the Department did not provide, or have, funding for ongoing treatment.

The juvenile court nevertheless ordered the Department to find a treatment program and cover the cost, framing the issue as one of reasonable efforts. The Department did not move to reconsider the order or otherwise alert the court that it disputed the court's statutory or constitutional authority to enter the order. Instead, the Department ran straight to the appellate courts and petitioned for a writ of certiorari, arguing for the first time that the juvenile court's order exceeded the statutory scope of reasonable efforts and violated the separation of powers. The Department now also challenges the father's visitation restrictions in the order.

But we do not resolve issues that were neither raised nor ruled on below—even weighty, constitutional ones. Because the Department never presented its statutory- or constitutional-authority arguments to the juvenile court—and the juvenile court never ruled on them—error is not preserved for appellate review. And since we have already reversed the father's visitation restrictions in his expedited appeal while this certiorari proceeding was pending, that issue is now moot. We thus annul the writ.

## I.     Factual Background and Proceedings

This is the third time this child-in-need-of-assistance case has come before our court. *See In re B.H.*, No. 24-0869, 2024 WL 3688596 (Iowa Ct. App. Aug. 7, 2024); *In re B.H.*, No. 25-0504, 2025 WL 1452326 (Iowa Ct. App. May 21, 2025). As explained in those prior cases, a daughter was removed from her father's custody in February 2024 after he made concerning statements about sexually abusing the daughter during a mental-health episode.[1]  *B.H.*, 2025 WL 1452326, at *1.   The father then "obtained a troubling psychosexual evaluation, which recommended no contact between the father and daughter until the father completed inpatient sex-offender treatment." *Id.*  And despite otherwise complying with court directives, "the father's ability to progress toward visitation ground to a halt when the Department could not find an inpatient sexual offender treatment program for the father." *Id.* at *3.  A primary barrier to finding a program was cost—because the Department would not pay for the father's treatment, the Department needed to locate a program that either accepted the father's insurance or was affordable out of pocket.  *Id.*

After months passed without finding a treatment program, and thus no visits between the father and daughter, the juvenile court held a review hearing in November.  The daughter's guardian ad litem questioned the Department's social worker about whether the Department had any "special funds or any money that might be available for Father" to "participate in one of these outpatient programs."

---

[1] We avoid using the names of the parties to the juvenile court proceeding to respect their privacy because this opinion—unlike the juvenile court's order—is public.  *Compare* Iowa Code § 232.147(2) (2025)*, with id.* §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25.

The social worker testified that "[t]he Department does not have funding for ongoing treatment and services." The father's attorney also pressed the issue, and the social worker again clarified that "[i]f the Department is required to fund it, there is no funding available." Indeed, she explained that she did not know why there was no funding, but she "ran it through [her] supervisor and he's ran it through his supervisor, and we do not have funding for ongoing services."

Following the social worker's testimony, the court emphasized that "the Department is mandated to invest reasonable efforts to reunify a parent with a child." Because the sex-offender treatment was necessary to progress with reunification, the court opined that "the Department needs to figure out how to achieve that in a reasonable manner." So the court instructed the social worker to let the court and parties know if she heard back from a possible provider "so everybody kind of knows if we need to ask for another hearing or what we need to do. And I realize this puts you in a bad spot because your supervisor is telling you we don't have any money."

After the hearing, the court promptly issued a review order finding that "parental rights should not be dependent on whether a parent is rich enough to pay out of pocket for sex offender treatment, nor wait indefinitely for the small number of providers the Department has curated to provide a service that is very common and very much needed." And the court suggested "[t]he Department easily could work with the legislature and licensing boards to encourage, if not require, providers to make their services available regardless of payment source, and to work with the legislature to allocate funds to the Department for the services necessary to fulfill its statutory mandate to try to unify families."

The Department did not move to reconsider the order. Nor did it request another hearing on its obligation to find and pay for treatment. Instead, fifteen days after the hearing, the Department petitioned our supreme court for a writ of certiorari, arguing the juvenile court exceeded its statutory and constitutional authority by compelling the Department to cover the cost of the father's treatment. The supreme court granted the petition, stayed the part of the juvenile court's order directing the Department to "find a funding source to pay" for the treatment, and eventually transferred the case to our court.[2]

## II.     Error Preservation

The Department asserts the juvenile court (1) erred by construing its reasonable-efforts obligations to include locating and paying for sex-offender treatment, and (2) violated the separation of powers by functionally ordering the Department to reallocate and reappropriate funds to cover the father's treatment. But while these questions are important, we cannot consider them because they were never presented to—or decided by—the juvenile court.

"It is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *Sorci v. Iowa Dist. Ct.*, 671 N.W.2d 482, 489 (Iowa 2003) (cleaned up). And so, even in an original

---

[2] During the briefing stage, the child's guardian ad litem was tasked with defending the juvenile court's order but opted to waive an appellee brief. *See generally* Iowa Rs. App. P. 6.107(5), 6.901(1)(b). After we received the case, we asked the father to defend the juvenile court's order, noting we "would benefit from adversarial briefing on the issues raised by the Department, including whether error is preserved on the issues." Although the father's brief ultimately declined to address error preservation, we consistently enforce our error-preservation rules even when the parties themselves do not contest reviewability. *See Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000).

certiorari proceeding, we cannot consider claims of error which were not raised in the district court. *See id.* at 489–90. These fundamental principles of error preservation apply with equal force to constitutional issues. *See id.* at 490 (holding that certiorari plaintiffs failed to preserve error on constitutional claims); *In re A.M.H.*, 516 N.W.2d 867, 872 (Iowa 1994) (declining to reach parent's statutory and due-process arguments when parent failed to challenge the juvenile court's order under now-rule 1.904(2) before appealing); *In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) (holding that a due-process claim based on ending a juvenile "hearing without allowing [the party] to present more evidence and to testify" was not preserved).

Here, the Department summarily asserts it preserved error on "all issues" through its "recommendations for services and testimony at the November" hearing. But during that hearing, the Department only informed the juvenile court—through the cross-examination testimony of a social worker—that it did not have a funding source to cover the father's program. It never disputed the reach of its statutory reasonable-efforts duties under these facts, nor did it mention any separation-of-powers concern. And after the court issued its order, the Department still did not raise either issue in a motion to reconsider. *See Meier v. Senecaut*, 641 N.W.2d 532, 539 (Iowa 2002); *A.M.H.*, 516 N.W.2d at 872. By going straight to the appellate courts, the Department improperly bypassed the juvenile court and deprived it of the opportunity to address any possible errors itself "at a time when corrective action can be taken." *In re Marriage of Heiar*, 954 N.W.2d 464, 470 (Iowa Ct. App. 2020) (cleaned up); *see also Meier*, 641 N.W.2d at 539.

At bottom, the Department did not litigate these issues below. While juvenile cases always implicate weighty and important issues—indeed, it is hard to conceive of a more fundamental issue than whether to permanently sever the parent–child relationship—our error-preservation rules still apply. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We must thus decline to consider these unpreserved issues for the first time on appeal.

### III.    Visitation

In its merits brief, the Department also urges that the juvenile court should have resumed visitation between the father and daughter at the November review hearing. But the Department did not raise this issue in its petition for certiorari. And as the parties acknowledge, this issue has been resolved. While this certiorari proceeding was pending, the father separately appealed, and we held that he could begin fully supervised visits with his daughter in a therapeutic setting. *See B.H.*, 2025 WL 1452326, at *3–4. Because this issue is now moot, we do not decide whether it is properly before us or consider its merits

**WRIT ANNULLED.**