# IN THE COURT OF APPEALS OF IOWA

No. 16-2127
Filed March 22, 2017

**IN THE INTEREST OF O.H. and V.H.,**
**Minor Children,**

**S.H., Mother,**
    Appellant,

**B.H., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A mother and a father separately challenge a juvenile court order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Raya D. Dimitrova of Carr & Wright, P.L.C., Des Moines, for appellant mother.

Bonnie J. Heggen, Ankeny, for appellant father.

Thomas J. Miller, Attorney General, and David M. Van Compernolle, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, guardian ad litem for minor child.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

These termination-of-parental-rights appeals involve two children: seven-year-old O.H. and his one-year-old sister, V.H.  The relationship of their parents, Stephanie and Braden, has been plagued by domestic violence and substance abuse.  In granting the State's petition to terminate parental rights, the juvenile court decided those issues continued to endanger the children.  In their separate appeals, Stephanie and Braden contend the State did not offer clear and convincing evidence to support the statutory grounds for terminating their parental rights.  Stephanie also argues termination was not in the children's best interests and asks for six additional months to achieve reunification.  After an independent review of the record, we conclude clear and convincing evidence supports the juvenile court's order.[1]

## I. Facts and Prior Proceedings

O.H., born in November 2009, and V.H., born in August 2015, are the biological children of Braden and Stephanie.  Stephanie has an older daughter, L.S., who is not a subject of this appeal.  O.H. and L.S. came to the attention of the Iowa Department of Human Services (DHS) in June 2015 upon reports Braden and Stephanie were abusing methamphetamine, marijuana, and illegal prescription drugs; Braden was selling drugs from the home; and Braden had

---

[1] We review termination proceedings de novo, which means we examine both the facts and the law and judge anew those issues properly preserved and presented.  *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016); *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995).  We give weight to the juvenile court's factual findings, especially when it comes to assessing the credibility of witnesses, but are not bound by them.  *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).  The clear-and-convincing-evidence standard is less onerous than the standard of proof beyond a reasonable doubt but more burdensome than proof by a preponderance of the evidence; it means "there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence."  *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013) (citation omitted).

assaulted Stephanie in the presence of the children.[2]   The juvenile court adjudicated O.H. and L.S. as children in need of assistance (CINA) and issued an order for removal of the children.  L.S.—who was placed with her biological father, Chad—told child abuse investigators she and O.H. witnessed domestic violence in their home, including Braden placing Stephanie "in a chokehold" while Stephanie was pregnant with V.H.

Despite the pending CINA case for her older children, Stephanie did not inform DHS workers that she was pregnant or had given birth.  The juvenile court ordered removal of the new baby, V.H., in September 2015 and adjudicated her as a CINA due to ongoing concerns about domestic violence and substance abuse.  The DHS placed O.H. and V.H. with extended family members; both families have taken steps to become pre-adoptive homes.

The parents did not exhibit progress regarding their substance-abuse issues during the case.  Stephanie reported struggling with drug abuse since her teens.   In September 2015, she tested positive for Oxycodone and Oxymorphone, which were prescribed to her following complications with her Caesarean section.   But during the course of the case, Stephanie failed to recognize her reliance on opiates as a problem.  The medical clinic she attended flagged her files for drug-seeking behavior.  As part of her case plan, Stephanie was called to provide drug screens, which she frequently missed; she also tampered with the urine samples or tested positive.

---

[2] The juvenile court also noted O.H. was present during a drug raid at the father's home in September 2014.

Braden also has a history of substance abuse dating back to high school. His participation in outpatient treatment in 2015 was sporadic. In December 2015, Braden was arrested for a probation violation and remained in jail until March 1, 2016, when he was released to an in-patient treatment program. He was unsuccessfully discharged from that program after only one week when he snuck out of the facility to meet with Stephanie. A warrant was pending for his arrest between March and July 8, 2016, when he was found at Stephanie's residence. Braden has been incarcerated since that time.

Domestic violence also persists as a problem in this family. Both parents have sought civil protective orders alleging abuse by the other. During the CINA case, both parents played down the seriousness of the domestic violence perpetrated by Braden against Stephanie and did not appreciate its negative impact on the children.

On July 15, 2016, the State filed a petition to terminate parental rights. The juvenile court heard the matter on several trial dates in August and September 2016. On November 30, 2016, the juvenile court issued an order terminating the parental rights of both Braden and Stephanie based on Iowa Code section 232.116(1)(f) (2016) for O.H. and section 232.116(1)(h) for V.H. The court found Stephanie to be dishonest in both her dealings with service providers and during her trial testimony. The court expressed concerned about Stephanie's minimization of her addiction to pain medication and her "clear intent" to maintain a relationship with Braden despite the history of domestic violence. The court also found Braden was "not in a position to resume custody of these children as he has not successfully addressed any of the issues which

led to removal." The court pointed out that for the majority of 2016, Braden had been "in custody or on the run with an active warrant." At the time of the termination proceedings, Braden was serving a ten-year prison sentence with a mandatory one-third minimum.

Both parents filed petitions to appeal the court's termination order.

## II.     Father's Claims Not Preserved

At the termination hearing, Braden argued only that the juvenile court should delay permanency until the children could be placed with him. *See* Iowa Code § 232.104(2)(b) (allowing court to delay "placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order").[3]

But in his petition on appeal, he contends the State failed to meet its burden to offer clear and convincing evidence to support the statutory grounds for termination. Braden's appellate argument was not preserved for our review. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) (holding general rule that an argument may not be raised for the first time on appeal applies in termination-of-parental-rights cases). Additionally, to the extent Braden is mounting a reasonable-efforts challenge on appeal, the juvenile court record also shows that he failed to preserve that issue for our review. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005). We affirm the juvenile court on Braden's appeal.

---

[3] Braden acknowledged that because of his incarceration, he would not be in a position to resume custody even after six months.

### III.     Mother's Claims Refuted by the Record

### A.  Statutory Grounds

The juvenile court based its termination order on paragraphs (f) and (h) of Iowa Code section 232.116(1).[4]  Both paragraphs require the State to prove, by clear and convincing evidence, the children cannot be returned to the custody of their parents at the present time.  *See* Iowa Code § 232.116(1)(f)(4), (h)(4).  It is that element in both statutes that Stephanie contests.

Stephanie argues she lives in a home that is ready for the children's return.  She acknowledges the home is in Braden's name, but she asserts that entanglement is not a problem because he is currently incarcerated.  Stephanie also asserts she has been "compliant with services" and "has made progress."

Deferring to the juvenile court's grave concerns about Stephanie's honesty, we find a return to their mother's care at the present time would not be a safe option for O.H. and V.H.  The record includes clear and convincing evidence of Stephanie's unresolved substance-abuse issues and a dangerous co-dependency between Stephanie and Braden.  Stephanie testified she did not believe Braden was a safe person "yet"—that he needed to seek treatment for anger management and drug addiction.  But the juvenile court did not believe, based on the evidence of Stephanie's ongoing communication with Braden, that she would place the safety and well-being of the children ahead of her desire to continue an intimate relationship with Braden.  *See In re T.S.*, 868 N.W.2d 425,

---

[4] Paragraph (f) requires proof the child is four years of age or older and has been removed for at least twelve of the last eighteen months, while paragraph (h) requires proof the child is three years of age or younger and has been removed for at least six months of the last twelve months.  Iowa Code § 232.116(1)(f), (h).

435 (Iowa Ct. App. 2015) (finding that returning child to mother was "contrary to his welfare" where record disclosed mother "gained very little insight over the course of the proceedings about her domestic violence issues and the dangers they pose to the children").

The State's evidence demonstrated Stephanie lacked any steady employment, instead selling Braden's sports memorabilia on eBay for income. The juvenile court also doubted testimony from service providers indicating Stephanie was making progress with the issues of substance abuse or domestic violence because they were working with selective and misleading information provided by Stephanie. Reviewing the evidence in its entirety, we conclude Stephanie cannot provide the children a stable home at the present time.

**B. Best Interests of the Children**

Stephanie next argues termination of her parental rights was not in the best interests of the children. She highlights her "close, loving relationship" with O.H. and V.H., as documented by her own testimony, as well as by the observations of the social workers. We acknowledge the record shows a loving bond between Stephanie and her children. But that emotional connection is not enough to preserve the legal relationship if a return to parental custody poses a risk of harm to the children.

Our determination of the children's best interests must track Iowa Code section 232.116(2). *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (rejecting judicial use of an unstructured best-interests test). That provision focuses our attention on the children's safety; the best placement for furthering their long-term nurturing and growth; and their physical, mental, and emotional condition

and needs. *See* Iowa Code § 232.116(2). In assessing best interests, the juvenile court wrote: "These children's future can be gleaned from evidence of the parent's past performance and motivations." *In re T.B.*, 604 N.W.2d 660, 662 (Iowa 2000). We agree. Stephanie has not been able to offer the children a safe, stable environment, free from the specter of domestic violence and substance abuse. Their physical, mental, and emotional needs appear to be best served by terminating her parental rights and moving toward permanent placements.

### C. Request for Six-Month Extension

As an alternative argument, Stephanie asks for six more months to allow reunification. *See* Iowa Code § 232.104(2)(b).[5] She contends her willingness to engage in services and anticipated employment would enable her to successfully resume custody of O.H. and V.H. with an extension of time.[6]

For the reasons discussed above, we decline to defer the children's permanency. While Stephanie may be able to achieve greater stability in her housing and employment over time, the record offers little hope she will

---

[5] That section reads, in relevant part:
> After a permanency hearing the court shall . . . [e]nter an order . . . to continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.

[6] Stephanie contends on appeal that the juvenile court's refusal to delay permanency was a Due Process violation. Because it does not appear Stephanie alerted the juvenile court to a constitutional claim, we decline to consider a separate Due Process argument on appeal. *See In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal.").

appreciate the peril posed by her continued association with Braden or will fully address her addiction in the near future. Because the children had been out of the home for twelve months at the time of the termination hearing, "we view the proceedings with a sense of urgency." *In re A.A.G.*, 708 N.W.2d at 93. From our de novo review of the record, we are unable to make a finding the need for removal would no longer exist after a six-month extension.

**AFFIRMED ON BOTH APPEALS.**