# IN THE COURT OF APPEALS OF IOWA

No. 19-0103
Filed March 20, 2019

**IN THE INTEREST OF P.L.,**
**Minor Child,**

**P.L., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Barbara H. Liesveld,

District Associate Judge.


        The mother appeals the termination of her parental rights.  **AFFIRMED.**


        Patricia J. Meier of Nidey Erdahl Fisher Pilkington & Meier, PLC, Cedar

Rapids, for appellant mother.

        Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

        Julie Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and

guardian ad litem for minor child.


        Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**POTTERFIELD, Presiding Judge.**

The mother appeals the termination of her parental rights to her child, P.L., who was born in 2011.[1] The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) (2018). The mother challenges only whether the State fulfilled its mandate to make reasonable efforts to reunify the mother and child. This argument implicates the juvenile court's application of subsection 232.116(1)(f)(4)—that P.L. could not be returned to the mother's care at the time of the termination hearing. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) ("[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead . . . [t]he State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent."). We generally review termination decisions de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

We must begin by determining whether the mother's claim is preserved for our review. *See Weltzin v. Nail*, 618 N.W.2d 293, 296 (Iowa 2000) ("While de novo review allows the appellate court to consider the facts and issue in their entirety, the court can only review issues properly preserved."); *see also In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) (recognizing that "[e]ven issues implicating constitutional rights must be" properly preserved before the appellate court may rule on the merits). The State urges us to find it is not preserved.

In order to preserve for our review the question of whether reasonable efforts were made, "the [m]other had the obligation to demand other, different or additional services prior to the termination hearing." *In re S.R.*, 600 N.W.2d 63,

---

[1] The father's parental rights were also terminated. He does not appeal.

65 (Iowa 1990). Here, the first time the mother raised the issue of reasonable efforts was the day before the termination trial, when she filed what she titled an "application for reasonable services and motion to continue." She contends that application is sufficient to preserve the issue. Insofar as the mother requested new or different services one day before the termination hearing, we find this failed to preserve for our review the issue of reasonable efforts. Although the mother technically informed the court before the termination hearing, her attempt to get in under the wire is insufficient. Our error-preservation rules "are not designed to be hypertechnical." *Griffin Pipe Prod. Co., Inc. v. Bd. of Review*, 789 N.W.2d 769, 772 (Iowa 2010). The purpose of requiring a parent to notify the court about a perceived issue with services before a termination hearing is because of "the importance for a parent to object to services early in the process so appropriate changes can be made." *C.B.*, 611 N.W.2d at 493–94. One day is not enough to make the changes. *See In re B.K.*, 500 N.W.2d 54, 57 (Iowa 1993) ("Suggestions are due far earlier in the process."); *In re J.L.W.*, 570 N.W.2d 778, 781 (Iowa Ct. App. 1997) ("When the statutory time standards found in section 232.116 are approaching, and a parent has made only minimal progress, the child deserves to have the time standards followed by having termination of parental rights pursued."), *overruled on other grounds by P.L.*, 778 N.W.2d at 39. Moreover, we do not want to encourage last-minute requests for services to become a tactic for delay. *See In re D.B.*, No. 99-1100, 2000 WL 210451, at *6 (Iowa Ct. App. Feb. 23, 2000) (noting that a motion to substitute counsel "made on the eve of, or during trial" cannot be allowed to become a tactic for delay).

Within the mother's request for new services was a request to continue the termination hearing for six months in order to give her time to participate in those services. Although the mother contends the extension of time falls within reasonable services, we believe it is more appropriately considered as a request to delay permanency. *See* Iowa Code § 232.104(2)(b) (allowing the court to delay permanency for six months if the court finds the need for removal of the child from the parent's care will no longer exist at the end of the extension). And while she asserts the court made a procedural error by denying this request before it heard the evidence at the termination trial, the court still had the option to delay permanency after the close of evidence. *Id.* §§ 232.103, .104.

Like the juvenile court, we cannot say P.L. could be returned to her mother's care at the end of an additional period for reunification. The mother loves P.L. and has engaged in the services DHS requested in order to strengthen the parent-child bond and improve her parenting skills. We acknowledge that the services the mother asks for more time to participate in are also aimed at further strengthening the mother's and P.L.'s relationship. But the professionals involved with the family expressed doubts the additional time and services would rectify the strained relationship between P.L. and the mother, as they had already engaged in thirty-three weeks of parent-child interaction therapy (PCIT), which in its first phase was meant to work on "the child getting the bond and creating that relationship with their parent." Most families progress to the second phase in six to twelve weeks, whereas P.L. and the mother worked on the first phase for thirty-three weeks before the therapist concluded they were at maximum benefit and ended the PCIT. Even after they received the benefit of PCIT, P.L.

described visits with her mother as "too long" and "too much" and sometimes could not be convinced to go. Additionally, the service provider, social worker, and the clinical psychologist who evaluated the mother and child all indicated there is not a strong bond between the mother and P.L., and it was noted that P.L. has shown a stronger attachment to her foster families than she does to her mother. The psychologist expressed a fear P.L. would run away from home if she was forced to return to the mother's care.

The mother argues she should be given additional time because she suffered a traumatic brain injury as a child and has cognitive difficulties as a result. We note that the service providers, social worker, and therapist testified they were aware of the mother's need to be given materials in writing, shown more modeling, and experience repetition in order to learn and apply new skills. The evidence at trial was that these steps were taken. Additionally, the social worker testified that she has had cases where a parent learns more slowly and has recommended the court order additional time for reunification. However, she testified she did not believe additional time was appropriate here because P.L. was "showing signs of needing permanency" and the mother was not making even slow progress. Similarly, the guardian ad litem, when asked by the court to take a position on continuing the termination trial for six months, resisted the motion to continue, stating:

> [P.L.] is really struggling, and this delay in her having some decision about permanency is causing her a lot of stress and anxiety and increasing some of her negative behavior, and we are in a position where, I think the record and evidence today will show that visits that have occurred have been traumatic . . . . This is not a case where we are making slow progress. Frankly, I don't see

> progress toward reunification or much of any progress, and a delay
> at this point would not be in her best interest.

Neither our case law nor our statutes provide an exception to the statutory timeframe for the termination of parental rights when a parent has cognitive difficulties. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (concluding termination was appropriate where statutory timeframe for termination had passed and the parents' "lower mental functioning" affected the child's well-being). And we cannot say a delay of permanency would better equip the mother to resume parenting of P.L. *See* Iowa Code § 232.104(2)(b). While we commend the mother's commitment to continue seeking out and participating in services to better her relationship with P.L. and her parenting skills, our decision must ultimately be guided by the best interests of the child. *See In re D.S.*, 806 N.W.2d 458, 465 (Iowa Ct. App. 2011) ("The paramount concern in termination proceedings is the best interests of the child."). And here, the evidence establishes that P.L. needs permanency now.

Insofar as the mother challenges the juvenile court's denial of her motion to continue, we find no abuse of discretion. *See M.D. v. K.A.*, 921 N.W.2d 229, 232 (Iowa 2018) (reviewing motion to continue termination trial for an abuse of discretion). The mother's request for new or additional services one day before trial does not preserve her claim regarding reasonable efforts, and a delay of permanency would not be appropriate here.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**