# IN THE COURT OF APPEALS OF IOWA

No. 19-1515
Filed February 5, 2020

**IN THE INTEREST OF X.W.,**
**Minor Child,**

**X.W., Father,**
    Appellant,

**E.W., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A mother and father separately appeal the termination of their parental rights with respect to their child. **AFFIRMED.**

Kelsey Knight of Carr Law Firm, P.L.C., Des Moines, for appellant father.

Lori M. Holm, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Brent Pattison of Drake Legal Clinic, Des Moines, guardian ad litem for minor child.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

## I. Procedural Background

X.W. was born in July 2018. He came to the attention of the Iowa Department of Human Services (DHS) due to a case involving his sibling, P.X.W. The district court terminated the parents' rights to P.X.W. in May 2018 and such termination was affirmed by this court.[1]

Five days after the birth of X.W., the State successfully petitioned for a temporary removal order of X.W., who was placed in the custody of a relative of the father. He has remained out of parental custody since July 2018. There has never been a trial period at home. X.W. was adjudicated to be a child in need of assistance (CINA) on October 19, 2018, and that CINA status was confirmed at a dispositional hearing on November 8, 2018.

A permanency hearing was held in January 2019, and all parties stipulated the parents should be granted a six-month extension to work on reunification efforts. The State filed a termination petition in late April, and the termination hearing occurred in June 2019. The father was incarcerated and did not wish to participate in the hearing. The court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(b),(e),(g), and (h) (2019) and terminated the mother's parental rights pursuant to section 232.116(1)(g) and (h). Both parents timely appealed.

On appeal, the mother argues the State failed to make reasonable efforts as required by Iowa Code section 232.102. The father and mother contest each

---

[1] *In re P.W.*, No. 18-1030, 2018 WL 3650383 (Iowa Ct. App. Aug. 1, 2018).

statutory ground upon which their rights were terminated. Both parents argue that termination is not in the child's best interest. Lastly, the mother argues that the court erred in failing to apply one of the permissive factors outlined in section 232.116(3).

On our independent review of the record, we affirm termination as to both the mother and the father. We agree with the district court that reasonable efforts were provided by the State for reunification purposes between the mother and X.W., that termination is in the child's best interest, and that no permissive exception should be applied to preclude termination.

## II. Standard of Review

Review of all termination proceedings is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Under de novo review, "[w]e review both the facts and the law and adjudicate rights anew on the issues properly presented." *In re A.T.*, 799 N.W.2d 148, 150–51 (Iowa Ct. App. 2011). "We give weight to the juvenile court's findings, but are not bound by them. Our paramount concern is the child's best interests." *Id.* at 151.

On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."). Accordingly, we proceed with analysis under Iowa Code section 232.116(1)(h) concerning the father and Iowa Code section 232.116(1)(g) concerning the mother.

**III. Analysis**

A. Reasonable Efforts

We first address the lack-of-reasonable-efforts argument advanced by the mother. To transfer legal custody of a child in CINA proceedings, a court "must make a determination that continuation of the child in the child's home would be contrary to the welfare of the child, and shall identify the reasonable efforts that have been made." Iowa Code § 232.102(6)(2)(b).

On appeal, the mother's argument in regard to reasonable efforts appears limited to the issue of visitation, specifically the reduction of visitation in early 2019. On appeal, she alleges the State fell short of providing reasonable efforts by arbitrarily reducing her visits with X.W. "without identifying a legitimate protective concern or . . . adjudicative harm." We consider the context of other services provided by DHS in our review of such argument concerning this narrow issue of reduced visitation.

The State's duty to make reasonable efforts encompasses a visitation arrangement "designed to facilitate reunification while protecting the child from the harm responsible for the removal." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). Visitation, however, cannot be considered in a vacuum. It is only one element in what is often a comprehensive, interdependent approach to reunification. If services directed at removing the risk or danger responsible for a limited visitation scheme have been unsuccessful, increased visitation would most likely not be in the child's best interests. *Id.*

When the State removes a child from a parent's care, the State has an obligation to "make every reasonable effort to return the child to the child's home

as quickly as possible consistent with the best interests of the child." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). In making reasonable efforts, "[a] child's health and safety shall be the paramount concern." Iowa Code § 232.102(12)(a) (defining reasonable efforts). The State's duty to make "reasonable efforts is not viewed as a strict substantive requirement of termination. *C.B.*, 611 N.W.2d at 493. The State has the burden to "show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *Id.*

Visitation between a parent and child is an important ingredient to the goal of reunification. *In re S.W.*, 469 N.W.2d 278, 280–81 (Iowa Ct. App. 1991). The best interests of the child, however, control the nature and extent of visitation and may warrant limiting parental visitation. *In re C.G.*, 444 N.W.2d 518, 520 (Iowa Ct. App. 1989). The DHS case worker testified that the reduction in visitation was due to the discovery of jail tapes between the mother and her new boyfriend; the discovery of the mother's brother living with her, despite her knowledge that he was actively using an illegal substance; and the discovery of a photograph of an individual in the mother's apartment posing with a gun. We find that the reduction in visitation after newly discovered concerns regarding sobriety of the mother and protective capabilities does not amount to denial of reasonable efforts, particularly when coupled with other services provided by the State.

The mother has been offered or provided a myriad of services since 2017, when X.W.'s sibling was removed from parental care for similar concerns of substance abuse and unsafe relationships. The district court described these services as "extensive." These services include child protective assessment services; family safety, risk, and permanency services; individual therapy for the

parent; relative placement; family team meetings; supervised visits; drug screens for the parent; drug screen for the child; substance-abuse evaluations; substance-abuse treatment; mental-health evaluation for the parent; NA and AA meetings; a sponsor; domestic violence classes; domestic violence advocate; prior CINA case; post-removal conference; early access evaluation; parenting classes and parenting curriculum; transportation assistance; and paternity testing. We reject the mother's argument concerning reasonable efforts as the nearly eleven-month record in this case spans from X.W.'s birth and evinces continued reasonable efforts by DHS to facilitate or offer treatment for the mother and move toward reunification.

B. Statutory Grounds

We next turn to whether father's rights were properly terminated pursuant to Iowa Code section 232.116(1)(h).

For a termination to issue under paragraph (h) a court must find that

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The first three elements with respect to the father were met: by virtue of X.W.'s age; when X.W. was adjudicated to be a child in need of assistance in October 2018; and when X.W. remained out of parental custody since July 2018, a period of eleven consecutive months.

Because the father was incarcerated at the time of the hearing, he acknowledges that X.W. could not be returned to him. The relevant time for purposes of section 232.116(1)(h)(4) analysis is the time of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (interpreting "at the present time" to mean "at the time of the hearing").

He instead argues the child could have been returned to mother, an argument we have already rejected. *See In re C.T.*, No. 18-2199, 2019 WL 1055897, at *1 n.1 (Iowa Ct. App. Mar. 6, 2019). We reject challenges to termination that are based on a parent's argument that a child should be returned to the other parent. *See id.* Each parent needs "to advance their own reasons on appeal why, considering the juvenile court's findings regarding their individual strengths and weaknesses, their separate parental rights should not be terminated." *In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005). As the child could not be returned to the father at the time of the termination hearing, we find the trial court properly terminated the father's parental rights under section 232.116(1)(h).

We turn next to the argument advanced by the mother as such relates to section 232.116(1)(g).

For a termination to issue under paragraph (g) a court must find that

>    (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>    (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.

> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

The first two elements with respect to the mother were met when X.W. was adjudicated to be CINA in October 2018 and his parents' rights with respect to older sibling P.X.W. were terminated in May 2018. Like the district court, we find the mother has failed to meaningfully engage in services. We find clear and convincing evidence contained in the record that the mother lacks the ability or willingness to respond to services that would correct the situation and further rehabilitation would not correct the situation.[2]

The mother admitted using illegal substances early in her pregnancy with X.W., and recorded conversations show she planned to continue using after she delivers the child she was expecting at the termination hearing. Though she has separated from the father, the mother has since associated with three men with similar criminal histories, putative fathers of her current pregnancy. These men's criminal histories include drug, weapons, and theft charges. While the mother had made some progress, including completing twenty-four Iowa Domestic Abuse Program classes, taped jail phone calls and her testimony at the termination hearing reflect the lack of internalization of services provided.[3]

---

[2] "Evidence is clear and convincing when there are no serious or substantial doubts as to the correctness o[f] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (internal quotation marks omitted).

[3] The mother refused to respond to the State's questioning regarding progress in therapy, invoked the Fifth amendment concerning questions by the State concerning her driver's license, and evaded answering the State's questions, responding with phrases, such as "Whatever floats your boat" or "This is ridiculous."

The mother has been less than forthcoming regarding her abuse of illegal substances. She tested positive while pregnant with X.W. for marijuana and opiates. She had a positive UA for hydrocodone in October 2018 and provided false documentation indicating that she had a prescription for hydrocodone when in fact she did not. She missed drug tests in December 2018 and on March 27, 2019. A drug test conducted on March 28, 2019, was positive for benzodiazepines. The mother had no credible explanation for this result.

The mother was pregnant at the time of the termination hearing. She admitted to being intoxicated on January 1, 2019, telling one of the putative fathers of her current pregnancy that she consumed a large amount of alcohol and passed out. She acknowledged that such might affect the health of her expected baby. The mother's continued substance abuse and lack of protective capabilities presents clear and convincing evidence that the mother continues to lack the ability or willingness to respond to services which would correct the situation and that an additional period of rehabilitation would not correct the situation.

C. Best Interest

Both the mother and the father argue the district erred when it found termination of their rights to be in the best interests of X.W. We disagree.

At the time of termination, X.W. had been placed in a stable environment with a relative for nearly one year. In seeking to determine the best interests of a child, "we look to the child's long range as well as immediate interest. Hence, we necessarily consider what the future likely holds for the child if returned to his or her parents." *In re T.D.C.*, 336 N.W.2d 738, 740–41 (Iowa 1983).

"Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." *In re T.J.O.*, 527 N.W.2d 417, 422 (Iowa Ct. App. 1994). Patience with troubled parents must be limited so as to avoid "intolerable hardship" for children. *In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989).

In determining if termination is in the child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). We also review "[t]he length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining that environment and continuity for the child." *Id.* § 232.116(2)(b)(1). "A parent's right to raise his or her child is an important interest warranting deference," however "[t]he State's interest in providing a stable, loving homelife for a child as soon as possible is just as important an interest." *P.L.*, 778 N.W.2d at 38.

As of the termination, the father remained incarcerated. He declined to participate in the permanency hearing and termination hearing. At a substance-abuse and mental-health screening in April 2019, he admitted using both marijuana and methamphetamines "all day, every day" until his arrest in March 2019. His parental rights to three older children have been previously terminated. Further, while the mother does well at visitations, she has professed an intention to resume consumption of illegal drugs and continued to associate with persons having significant criminal histories. She expressed a posture to beat or "whoop"

her child if he or she engaged in activities of which she disapproved. We find termination of the parental rights is in X.W.'s best interest.

D. Permissive Exceptions to Termination

Finally, we consider whether any exception in section 232.116(3) should be applied to render termination unnecessary. The mother highlights the relative's custody of X.W. as a factual basis on which the court should have applied paragraph (a), which allows for permissive abstention from termination where "[a] relative has legal custody of the child." Iowa Code § 232.116(3)(a). The mother also argues that there was "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship," citing Iowa Code section 232.116(3)(c). *See D.W.*, 791 N.W.2d at 709.

A termination, otherwise warranted, may be avoided under this exception. *In re D.E.D.*, 476 N.W.2d 737, 738 (Iowa Ct. App. 1991). The factors under section 232.116(3) have been interpreted by the courts as being permissive, not mandatory. *In re C.L.H.*, 500 N.W.2d 449, 454 (Iowa Ct. App. 1993). X.W. has spent nearly all his life in the custody of a relative. There is no evidence in the record that a termination will be detrimental to the child. Based on the record, we find no error in the trial court's refusal to apply a permissive exception to termination.

## IV. Conclusion

We find the district court properly applied Iowa Code section 232.116 to terminate the parental rights with respect to X.W. and find that reasonable efforts were made by the State to promote reunification between the mother and X.W.

We further agree that termination is in X.W.'s best interest, and there was no error in failing to apply a permissive exception to termination.  Accordingly, we affirm the district court.

**AFFIRMED.**