# IN THE COURT OF APPEALS OF IOWA

No. 20-1579
Filed March 3, 2021

**IN THE INTEREST OF E.M., D.K.-M., and B.M.,**
**Minor Children,**

**D.M., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Webster County, Joseph McCarville, District Associate Judge.

A mother appeals the termination of her parental rights to her three young daughters. **AFFIRMED.**

Alesha M. Sigmeth Roberts of Sigmeth Roberts Law, PLC, Clarion, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Sarah J. Livingston of Thatcher, Tofilon and Livingston, P.L.C., Fort Dodge, attorney and guardian ad litem for minor children.

Considered by May, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

A mother appeals the termination of her parental rights to her three daughters, ages four, three, and one year at the time of the termination hearing.[1] The mother challenges the sufficiency of the evidence relied on by the district court for termination under Iowa Code section 232.116(1)(e) (2020). She also argues the State failed to provide reasonable efforts for reunification. Lastly, she requests an additional six months to reunify with her daughters. We address each argument in turn.

**1. Background Facts and Proceedings**

D.K.-M., born in 2016, and E.M., born in 2017, came to the attention of the Iowa Department of Human Services (DHS) due to concerns of methamphetamine use by the mother and her paramour. The mother's paramour was residing in the family home. The mother's drug test results were negative, but her paramour admitted to use of methamphetamine. DHS developed a safety plan, and D.K.-M. and E.M. were placed with their maternal grandmother and the grandmother's husband in April 2018.[2] This relative placement was short-lived, however, as the girls were subjected to lice, bed bugs, and cockroaches at the grandmother's residence, resulting in the girls having "bites all over their bodies." The district court's removal order characterized the home as "filthy." E.M. and D.K.-M. were

---

[1] The parental rights of D.K.-M.'s legal father were terminated on September 30, 2020. He has not appealed. The parental rights of D.K.-M. and B.M.'s biological father were terminated on October 1, 2020. He has not appealed. The parental rights of E.M.'s biological father were terminated on November 18, 2020. He has also not appealed.

[2] The mother informed DHS she was sexually abused by her stepfather for a period of seven years. At the time of the termination hearing, the mother was again residing in the home of her mother and stepfather.

formally removed from parental custody on July 5, 2018. B.M., born in 2019, was removed from parental custody on June 14, 2019, shortly after her birth. At the time of the termination hearing, the three girls were residing together in a foster home placement.

E.M. and D.K.-M. were adjudicated as children in need of assistance (CINA) on July 12, 2018, pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2018). B.M. was adjudicated CINA on April 29, 2020, pursuant to Iowa Code section 232.2(6)(n) (2020).[3] The children have remained out of the home since the dates of their removal. There have not been any trial home placements.

In addition to illegal drug concerns in the home, the mother's mental-health diagnoses have interfered with her ability to safely parent her daughters. She has been diagnosed with post-traumatic stress disorder, mild intellectual disorder, dissociative identity disorder, and bipolar I disorder. She struggled to address her mental health on a consistent basis since court involvement. The mother had not seen her therapist for the six months preceding the termination hearing. She was compliant with medication management. Following a parent evaluation, it was recommended all of the mother's interactions with her daughters be supervised. It was also recommended that the mother move to a group care facility for her own well-being. The mother declined the group care recommendation. The mother failed to follow through with the intellectual disability waiver program. She did not

---

[3] From the record, it appears that the court entered separate orders for adjudication for the mother and at least one of the fathers. The adjudication dates cited in our opinion relate to the mother.

consistently comply with Safe Care, a program designed to assist with parenting skills.

In addition to a lack of follow-through with services, the mother was inconsistent in contact with her daughters. While initially offered two visits per week, the mother reported the frequency of the visits to be overwhelming. At her request, the visits were reduced to once per week. While an attempt was made to increase the mother's visits, they were again reduced to once per week at the mother's request, beginning in August 2020. The mother missed thirty-five out of fifty-four visits since January 2020. While afforded a telephone call once per week, the mother testified that she often "spaced off" those opportunities for contact.

Also concerning is the mother's ongoing relationship with her paramour, who has an unaddressed substance-abuse issue. At the time of the termination hearing, he was in a halfway house. The mother testified she remained in a relationship with him, despite being informed by DHS that he was a barrier to her reunification with the girls. The mother has also maintained a relationship with a federal parolee on the sex offender registry.

**2. Analysis**

### A. Statutory Grounds

We begin our analysis guided by defined case law and statutory guidance concerning termination of parental rights. The district court terminated the mother's parental rights to D.K.-M. pursuant to section 232.116(1)(e) and (f). The district court terminated the mother's parental rights to E.M. and B.M. pursuant to section 232.116(1)(e) and (h). On appeal, the mother challenges termination only pursuant to section 232.116(1)(e).

The mother's failure to challenge termination under paragraph (f) and (h) waives any error as it relates to those grounds for termination, and we may affirm on those grounds without further analysis. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence."); *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (finding the court did "not have to discuss this step" where the parent did not dispute the existence of at least some of the statutory grounds); *see, e.g.*, *In re K.K.*, 16-0151, 2016 WL 1129330, at *1 (Iowa Ct. App. Mar. 23, 2016) (noting parent's failure to challenge statutory grounds under paragraphs (h) and (*l*) and affirming under those grounds without further analysis). Accordingly, we affirm the termination as to D.K.-M. under section 232.116(1)(f) and as to E.M. and B.M. pursuant to section 232.116(1)(h).

**B. Reasonable Efforts**

The mother also argues the State failed to provide reasonable efforts toward reunification. "The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000); *see also* Iowa Code § 232.102(7) (providing that if custody is transferred to DHS, it "shall make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). "The reasonable efforts concept would broadly include a visitation arrangement designed to facilitate reunification while protecting the child from the harm responsible for the removal." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996).

Although DHS must make reasonable efforts in furtherance of reunification, with some exceptions not applicable here, parents have a responsibility to object when they claim the nature or extent of services is inadequate. *See C.B.*, 611 N.W.2d at 493–94. A parent's objection to the sufficiency of services should be made "early in the process so appropriate changes can be made." *Id.* On appeal, the mother alleges that she preserved error on this issue at the combined permanency and termination hearing. Here, the record is not adequate to preserve error on appeal. "In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). The mother does not cites to any specific challenges lodged prior to the termination hearing as to reasonable efforts provided by the State. We find the mother has failed to preserve a reasonable efforts argument and do not further address this issue.

### C. Extension of Time

Lastly, the mother argues she should have been granted an additional six monthsto reunify with her daughters.[4] In support of the six-month request, the mother relies on her testimony from the termination hearing: "To go to my appointments like I'm supposed to. Keep going to my visits like I'm supposed to. Video chat the girls like I'm supposed to. Do the Safe Care more like I'm supposed to. And get my own place."

---

[4] We address this issue although it does not appear the district court specifically ruled upon a request for an extension of time. *See In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) (stating issues "must be presented to and ruled upon by the district court in order to preserve error for appeal").

Under section 232.117(5), the district court may order an extension of time under section 232.104 as an alternative to terminating parental rights. A six-month extension may be granted based on a "determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). At the time of the termination hearing held in November 2020, the two older children had been out of parental custody for twenty-seven months. The youngest child had been out of the home for over a year, her entire life. The mother remained unable to meet her own needs. While the mother made assurances of future compliance, the past two years are indicative of the mother's resolve. The mother continued in a relationship fraught with domestic violence. She has been unable to recognize the danger her relationships present to her girls.

While provided over two years of services, the mother has not been able to move beyond fully-supervised visits. DHS noted the mother's participation in services and interactions with her daughters had lessened over the six months preceding the termination hearing. Further, the mother acknowledged her relationship with her daughters was "not a very close one." The mother's progress for reunification has fallen flat to the detriment of her daughters. We are unable to determine with more time the need for removal will no longer exist at the conclusion of a six-month extension. The children's time for permanency is long overdue.

**3. Conclusion**

Based on our de novo review of the record, we affirm the termination of the mother's parental rights under section 232.116(1)(f) as to D.K.-M. and under section 232.116(1)(h) as to E.M. and B.M. We find the mother's reasonable efforts

argument to be unpreserved and a six-month extension of time for reunification is not warranted.  Accordingly, we affirm.

**AFFIRMED.**