# IN THE COURT OF APPEALS OF IOWA

No. 24-0834
Filed February 19, 2025

**IOWA DEPARTMENT OF HEALTH AND HUMAN SERVICES,**
    Plaintiff,

**vs.**

**IOWA DISTRICT COURT FOR POLK COUNTY,**
    Defendant.
_____

Certiorari to the Iowa District Court for Polk County, Susan Cox, Judge.

The Iowa Department of Health and Human Services challenges a juvenile court order prohibiting the department from changing the placement of a child in its custody until the court first holds an evidentiary hearing on whether the change is in the child's best interest. **WRIT SUSTAINED.**

Brenna Bird, Attorney General, Edward Bull, Deputy Attorney General, and Michelle R. Becker and Mackenzie Moran, Assistant Attorneys General, for plaintiff.

Nicole Garbis Nolan and Jami J. Hagemeier of Youth Law Center, Des Moines, attorneys and guardians ad litem for the minor child, for defendant.

Heard by Greer, P.J., and Langholz and Sandy, JJ.

**LANGHOLZ, Judge.**

Can a juvenile court prohibit the Iowa Department of Health and Human Services from changing the placement of a child in the Department's custody until the court first holds an evidentiary hearing on whether the change is in the child's best interest? The juvenile court issued such an order here—after the child's attorney and guardian ad litem told the court that the Department planned to move the eighteen-month-old child from the foster family where she had been placed for seventeen months to a new foster family where her two older siblings were placed. The Department petitioned for a writ of certiorari—which our supreme court granted—arguing that the juvenile court exceeded its statutory authority and infringed on the Department's authority to make specific placements.

Because this is a question of public importance warranting a decision, we reach the merits even though the case's progress in the juvenile court during our certiorari proceeding has mooted the question here. And on the merits, we agree with the Department that the order exceeded the juvenile court's limited statutory authority to review the Department's specific placement decisions. To be sure, the court could have reviewed and rejected the Department's placement decision if it had found the child's attorney proved the Department acted contrary to the child's best interests by unreasonably or irresponsibly selecting a suitable placement—all while giving deference to the Department's decision. But this order was entered outside that statutory authorization. And its prohibition on changing the specific placement—even temporarily—amounts to selecting the current placement. Under the statute, only the Department has that authority. To respect the different roles of the Department and the juvenile court, we must sustain the writ.

### I. Factual Background and Proceedings

This certiorari action concerns the youngest of four siblings. Because of their mother's ongoing substance-use and mental-health struggles, the three older siblings were adjudicated in need of assistance and removed from the mother's custody before the youngest daughter was born. The Department placed the two middle siblings together with a foster family and the oldest was placed separately for reasons not relevant to this proceeding.

When the daughter was just one month old, she tested positive for methamphetamine and was similarly removed from the mother's custody. The juvenile court transferred custody of the daughter to the Department "for purposes of relative placement (if possible), family foster care and/or shelter." The Department placed the daughter with a different foster family than the two middle siblings. And the daughter remained in the Department's custody and placed with that same foster family throughout the child-in-need-of-assistance proceeding.

As the mother's progress ebbed and flowed, the siblings remained placed apart, though they had regular visits. The daughter flourished with her foster family, bonding with them and hitting her development milestones.

About a year after the daughter's removal, the State petitioned to terminate the mother's parental rights, and the matter proceeded to a hearing. Three months after the termination hearing, while the juvenile court's final decision was pending, the mother moved to reopen the record to show new progress since the hearing. The court granted the motion and set a scheduling conference for the next week.

During that scheduling conference,[1] the daughter's attorney (also her guardian ad litem) raised an issue about the daughter's placement with the court. The attorney reported that the Department—without the attorney's prior knowledge—planned to move the daughter from her foster family and place her in a new foster home with her two siblings. The attorney objected to this move, believing it would harm the daughter to leave the home where she had spent seventeen of her eighteen months of life.[2] So in the order scheduling the reopened termination trial, the juvenile court also ordered the Department to "not move [the daughter] from her foster home, without a specific court order identifying the emergency reasons." And it set the "issue of [the daughter's] placement/guardianship" to be considered at the same time as the reopened termination hearing.

The Department moved to reconsider the order, asking the court "to strike the provision that the Department is prohibited from exercising its statutory duties as custodian." The Department argued that it alone had the authority to select a specific placement for the daughter, and that the court's order improperly limited the Department's custodial authority without any threshold finding that it "failed to act in the child's best interests by unreasonably or irresponsibly failing to discharge its duties in selecting a suitable placement for the child." Iowa Code § 232.102(1)(b)(2) (2024). In response, the daughter's attorney emphasized that

---

[1] This scheduling conference was unreported, so we must resort to the parties' representations and other statements within the record to discern what occurred.

[2] This was not the first dispute over the daughter's placement. According to the daughter's attorney, the Department once tried to move the daughter and her siblings into a home without electricity, running water, or telephones. The daughter's attorney prevented that placement without court involvement.

the Department is not the daughter's guardian, the mother's parental rights had not yet been terminated, and the daughter should not be moved "out of the only home she has ever known."

At the hearing on the Department's motion to reconsider, the Department argued the court went astray in freezing the Department's custodial powers without first giving the Department "a reasonable opportunity to be heard." And it reiterated its belief that it alone controlled "lateral" moves—presumably referring to moving children between homes within the same placement category. In response, the daughter's attorney stressed that the daughter could now be facing several future placements depending on the outcome of the termination hearing, which was not in her best interest. The attorney also offered a letter from the daughter's medical provider—written after the court's initial order—who opined that removing the daughter from her current foster home "could have lasting detrimental effects on her health and well-being." The court accepted the letter over the Department's objection.

The court granted the motion to reconsider and issued a revised order: "The Court orders [the daughter] remain in her current placement and that prior to any move an evidentiary hearing be held for the Court to determine if it's in the child's best interest." The court reasoned that the order was "necessary and in [the daughter's] best interest." The court explained that it based its conclusion on its belief that disrupting the placement would cause "additional trauma" and that moving her before assessing best interests would be "cruel." And the court concluded that keeping the daughter in a "safe, stable placement" would let the court "properly evaluate the mother's bond with the [daughter] as it relates to

[termination] exceptions and also what is in the [daughter's] best interest" at the reopened termination hearing.

Rather than proceeding with an evidentiary hearing on its placement,[3] the Department petitioned for a writ of certiorari. Our supreme court granted the petition and transferred the case to our court.

## II. Mootness

While this certiorari proceeding has been pending in the appellate courts, the termination and child-in-need-of-assistance cases continued along in the juvenile court. The mother's parental rights have been terminated.[4] And just before our oral argument, the juvenile court awarded guardianship and custody to the daughter's foster parents—not the Department. Because the Department no longer has custody of the daughter, it can no longer move the daughter to a new placement—regardless of the juvenile court's order. Although the Department has appealed that order, it concedes that that the fighting issue in this case has been rendered moot. *See Homan v. Branstad*, 864 N.W.2d 321, 328 (Iowa 2015).

We normally refrain from resolving issues when our ruling would not carry any "force and effect" in the underlying proceeding. *Id.* (cleaned up). But our mootness doctrine has exceptions. *See Riley Drive Ent. I, Inc. v. Reynolds*, 970 N.W.2d 289, 296 (Iowa 2022). And the Department argues the public-importance exception applies here. *See id.* at 298. The public-importance exception turns on

---

[3] At the end of the reconsideration hearing after ruling from the bench, the court offered that "[i]f the State would like to request an evidentiary hearing at this time for me to evaluate the best interest of the child, we can commence with that hearing at this time." The State did not make such a request, and the hearing concluded.
[4] We have already affirmed the termination of the mother's rights. *See In re I.T.*, No. 24-1209, 2024 WL 4620509 (Iowa Ct. App. Oct. 30, 2024).

four factors: "(1) the private or public nature of the issue; (2) the desirability of an authoritative adjudication to guide public officials in their future conduct; (3) the likelihood of the recurrence of the issue; and (4) the likelihood the issue will recur yet evade appellate review." *Id.* (cleaned up).

Here, all four factors support applying the exception. The scope of the Department's custodial authority to place children adjudicated in need of assistance, and the role of the juvenile court to review and respond to those selections, are public issues and important. Because the Department is often the custodian for children removed from their parents' custody, the issue is likely to recur. And because of the expedited nature of child-welfare proceedings—designed to prevent children from languishing in parentless limbo—and the ephemeral nature of these disputes, it is likely they will often be rendered academic while the appellate process runs its course. So even if this case is now moot, we exercise our discretion to reach the merits under the public-importance exception.

### III.     Statutory Authority for Placement of Children in HHS's Custody

"A writ of certiorari lies where a lower board, tribunal, or court has exceeded its jurisdiction or otherwise acted illegally." *State Pub. Def. v. Iowa Dist. Ct.*, 747 N.W.2d 218, 220 (Iowa 2008) (cleaned up). A court acts illegally if it "has not properly applied the law." *Id.* (cleaned up). And so, "our review in an original certiorari action is for correction of errors at law." *Id.*; *see also K.C. v. Iowa Dist. Ct.*, 6 N.W.3d 297, 301 (Iowa 2024).

The Department argues that the juvenile court's order was illegal because it exceeded the court's statutory authority to review the Department's specific placement decisions for the daughter. So we start with the text and context of the

entire statutory scheme. In 2022, as part of a larger juvenile justice and child welfare act, the legislature enacted several nearly identical provisions governing the placement of children removed from their homes at different phases of child-in-need-of-assistance proceedings. *See* Iowa Code §§ 232.78(8) (placement after a child is temporarily removed through an ex parte order); 232.95(7) (placement after temporary removal hearing); 232.96(11) (placement after adjudicatory hearing); 232.102(1) (placement after dispositional hearing); *see also* 2022 Iowa Acts, ch. 1098, §§ 26, 40, 43, 45. These provisions—like many aspects of the child-welfare system—set important roles for both the Department and the juvenile court in placement decisions. *See In re K.C.*, 660 N.W.2d 29, 34–35 (Iowa 2003) ("The juvenile justice system is one area in which we see a sharing of powers between the executive and judicial branches.").

They authorize the juvenile court to transfer custody of a child to the Department for placement within defined categories, such as with relatives or in foster care. *See* Iowa Code § 232.102(1)(a)[5] (listing categories of placement in "order of priority"). Custodians generally have the power to "maintain or transfer to another the physical possession" of a child. *Id.* § 232.2(12)(b)(1). But when the Department is a child's custodian, the court is granted the power to "identify a category" of placement. *Id.* § 232.102(1)(b)(1). And then, "the department shall have the authority to select the specific person or facility within that category for placement, subject to court review at the request of an interested party." *Id.*

---

[5] Because the material language within each provision is identical, we cite only section 232.102(1) for readability and since it is the provision governing placement at the phase of child-in-need-of-assistance proceedings relevant here. But our analysis applies equally to sections 232.78(8), 232.95(7), and 232.96(11).

The contours of that "court review" of a specific placement are also set by statute. "The court shall give deference to the department's decision for placement of a child." *Id.* § 232.102(1)(b)(2). And the interested party opposing "the department's placement of a child shall have the burden to prove the department failed to act in the child's best interests by unreasonably or irresponsibly failing to discharge its duties in selecting a suitable placement for the child." *Id.*

So under this statutory scheme, the Department does not have unfettered power to select specific placements. Rather, when it assumes custody of a child, its "*authority to select* the specific person or facility" for placement is "*subject to court review at the request of an interested party.*" *See id.* § 232.102(1)(b)(1) (emphasis added). That review sets a high bar in favor of the Department's selection—the juvenile court must give deference to the Department's placement decision and the party opposing the placement must "prove the department failed to act in the child's best interests by unreasonably or irresponsibly failing to discharge its duties in selecting a suitable placement for the child." *Id.* § 232.102(1)(b)(2). Yet requiring an opposing party to clear that high bar and ensuring the Department's expertise enjoys deference is not the same thing as stripping the juvenile court's authority to scrutinize the Department's selection. For "review" to carry meaning, and for the burden on the opposing party to come into play, the juvenile court must be able to review the placement and, should it find the Department unreasonably or irresponsibly failed to discharge its duties in selecting the placement, reject the Department's selection.

Nor is the Department correct when it insists the juvenile court's role is limited to "monitoring" the Department's chosen placements. In support of this

argument, the Department relies heavily on *In re E.G.*, 738 N.W.2d 653 (Iowa Ct. App. 2007). There, the Department had post-termination guardianship and custody over a boy, which included the authority to consent to adoption. *E.G.*, 738 N.W.2d at 654. Yet over the Department's objection, the juvenile court ordered custody be placed with a foster parent and the boy be adopted by that foster parent. *Id.* We reversed, explaining it is the guardian, not the court, who may establish custody or consent to adoption. *Id.* at 657. And when the juvenile court directed that the foster parent be permitted to adopt the boy, it improperly "exercised authority the legislature gave to the Department as guardian." *Id.*

True, *E.G.* says that when the legislature gave juvenile courts "the authority to specify the child's best interests, it granted authority to the juvenile court to direct the *type* of placement the Department was to make, but did not empower the juvenile court to direct a *specific* placement, though the court had the power to monitor the placement." *Id.* But this directive was born from a different statute—specifically, a juvenile-delinquency provision authorizing courts to transfer the custody of delinquent children to the Department "for purposes of foster care and prescribing the type of placement which will serve the best interests of the child and the means by which the placement shall be monitored by the court." *Id.* at 657 n.11 (quoting Iowa Code § 232.52(2)(d)(3) (1981)); *accord* Iowa Code § 232.52(2)(d)(3) (2023); *see also In re C.D.P.*, 315 N.W.2d 731, 733 (Iowa 1982).

When setting the bounds of the Department's custodial placement authority during child-in-need-of-assistance proceedings, the legislature chose different language. Of course, the court still must monitor the placement. *See id.* § 232.102(6) (requiring transfer order to "prescribe the means by which the

placement shall be monitored by the court"). But the legislature also authorized juvenile courts to "review" the Department's placement selection whenever an interested party requests it. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) ("[W]here the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea."). We thus follow the governing statute's text rather than precedent interpreting a materially different statute.

With this statutory framework in mind, did the juvenile court exceed its authority here? The Department asserts that the juvenile court's order flouted the statutory procedure by cabining its custodial placement authority without first making the necessary predicate findings that it selected the placement unreasonably and contrary to its duty to act in the daughter's best interest. And it contends that the juvenile court's prohibition on changing the placement amounts to selecting a specific placement—the daughter's current foster family—without any authority to do so. The daughter's attorney, conversely, points to the overarching best-interest principles that animate our child-welfare laws and insists juvenile courts must always be empowered to prevent actions that stray from a child's best interest.

The Department has the better argument. To be sure, our polestar is always what is best for the child. But a court must make its best-interest determination within—not outside of—existing statutory procedures and standards. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (explaining courts may not "disregard" a "statutory framework in favor of the judge's own perception as to the best interest of a child"). And while "courts have some inherent authority to

ensure the orderly, efficient, and fair administration of justice," any such inherent authority "could not be exercised to circumvent the expressed legislative policies woven into law." *In re K.N.*, 625 N.W.2d 731, 734 (Iowa 2001). Our role "is only to interpret statutes, not second-guess the underlying policies." *Id.*

Here, we believe the legislature delineated power between the Department and the juvenile court for placing removed children who are in the Department's custody. The Department decides where to specifically place a child within the categories set by the court unless and until a court's review finds the opposing party carried its burden to show the Department "failed to act in the child's best interests by unreasonably or irresponsibly failing to discharge its duties in selecting a suitable placement for the child." Iowa Code § 232.102(1)(b)(2). Notably, this best-interest inquiry is distinct from other best-interests formulations within chapter 232, *see, e.g.*, *id.* § 232.116(2), placing more focus on the Department's processes and giving it greater deference than the juvenile court's order did here.

All agree that the juvenile court did not follow this statutory review procedure to issue its order. Rather than setting the category of placement or conducting the statutory review process with its required deference, burdens, and findings, the juvenile court ordered the daughter's placement to be with the current foster family. Such an order is outside the authority granted under the statute to the juvenile court. *See id.* § 232.102(1)(b). And by ordering placement with the current specific foster family, the juvenile court infringed into the authority to select the specific placement that the statute grants to the Department. *See id.* We cannot circumvent this recently amended statutory scheme by holding that the court's order is authorized by some other inherent power. *See K.N.*, 625 N.W.2d at 734.

This interpretation of the statute also makes sense. Delineating power ensures that the Department will always be able to react quickly to make a needed placement change to protect the safety of a child in its custody. And the juvenile court remains the final word on any challenged placement decision through its review power. Indeed, this allocation of power respects the classic competencies of the executive and judicial roles. *Compare The Federalist, No. 70*, at 423–24 (Hamilton) (Clinton Rossiter ed., 1961) (discussing the benefits of an executive that can act with "dispatch" and "energy"), *with id.*, *No. 78*, at 465 (Hamilton) (reasoning that the judiciary has "neither FORCE nor WILL, but merely judgment").

To find support for the court's authority to limit the Department's placement power before an evidentiary hearing and resulting findings, the daughter's attorney looks to *In re J.L.*, 973 N.W.2d 895 (Iowa Ct. App. 2022). There, a juvenile court temporarily stayed the Department's decision to move a child to Florida pending resolution of motions to remove the Department as guardian from the child's foster parent and guardian ad litem. *J.L.*, 973 N.W.2d at 903. But we see two problems with relying on *J.L.* First, the juvenile court's authority to order a temporary stay was not litigated on appeal. *See Jorgensen v. Smith*, 2 N.W.3d 868, 875 (Iowa 2024) (explaining appellate courts "consider only questions argued by the parties" and "our opinions should not be understood as all-encompassing court-approved treatises on a given body of law" (cleaned up)). And second, the legislature amended the guardian-removal statute after our *J.L.* decision, codifying a standard for removing a guardian similar to the provisions at issue. *See* Iowa Code § 232.118(1)(a)–(b); 2022 Iowa Acts, ch. 1098, § 62. So *J.L.* gets us no

closer to finding textual support for limiting the Department's placement authority as the juvenile court did here.

* * *

Our decision today should not be read as an endorsement of the Department's actions. Had this dispute over placement proceeded to hearing,[6] the daughter's attorney may well have met her burden to set aside this placement. Indeed, suddenly upending this young girl's stable home life a few months before the mother's parental rights were being considered for termination, when it had never before placed all the siblings together, against the recommendation of the daughter's medical provider, is troubling. *See generally In re K.D.*, 975 N.W.2d 310, 326–27 (Iowa 2022).

We also expect that the Department would conclude that its duty to act in the best interest of a child in its custody, *see, e.g.*, Iowa Code § 232.102(1)(b)(2), (6), would generally require the Department to provide notice to the parties in advance of a placement move absent emergency circumstances. Such notice would ensure proper transition planning and give an interested party the chance to seek court review before the move occurs. And we likewise expect that in many instances when an interested party objects to a forthcoming placement, the Department would exercise its judgment to delay moving the child until after court review has completed—even now knowing that the court lacks authority to *order* it

---

[6] To be clear, we do not decide whether a juvenile court must hold an evidentiary hearing before ruling on an interested party's request for court review of a specific placement. *Compare* Iowa Code § 232.118(1) (expressly requiring "notice to the parties and a hearing" before removing a court-appointed guardian), *with id.* § 232.102(1)(b) (including no such express requirement for placement review).

to do so—to ensure children are not unnecessarily subjected to multiple moves.[7]
But none of this gives us leave to depart from the statutory allocation of powers between the Department and the juvenile court set by our legislature.

In sum, we read section 232.102(1)(b) to authorize the Department to decide where to place removed children in its custody within a particular placement category. A juvenile court may override a Department placement decision only after finding that, even giving deference to the Department's decision, the party opposing the placement has carried its burden to show the Department "failed to act in the child's best interests by unreasonably or irresponsibly failing to discharge its duties in selecting a suitable placement for the child." Iowa Code § 232.102(1)(b). Because the juvenile court's order restricted the Department's placement authority and did so based on its own notions of what was best for the child, rather than after making the requisite findings required by statute, the court exceeded its statutory authority and we must sustain the writ.[8]

**WRIT SUSTAINED.**

Sandy, J., concurs; Greer, P.J., dissents.

---

[7] Contrary to the Department's suggestion in its briefing to us, we see no basis in the text of the statute to conclude that the court's review may only take place after the child has moved to the new placement. The statute speaks of reviewing the Department's actions "selecting" a placement and its "decision for placement." Iowa Code § 232.102(1)(b)(2). So long as the Department has made its placement decision, that decision is ripe for court review under the statute.

[8] The Department raises additional issues with the juvenile court's order beyond procedural compliance. Because we sustain the Department's writ and vacate the order, we do not consider these other issues. Going forward, issues like the proper deference to the Department, the statutory preference (but not mandate) to place siblings together, and any other considerations going to the appropriateness of a child's placement may be raised and resolved as part of the court's review of a disputed placement.

**GREER, Judge** (dissenting).

The majority's introductory question exposes the quandary advanced by the Iowa Department of Health and Human Services's position. Which leads to *my* question: how can the Department, our legislature, and our court align with the process that allows a child to be moved from a long-term placement, which might be contrary to the child's best interests, before the choice of the new placement can be tested? Apparently, we are to read the statute to so find. Yet, I cannot find that directive in the language of the statutory scheme. The majority stated: "To be sure, the court could have reviewed and rejected the Department's placement decision if it had found the child's attorney proved the Department acted contrary to the child's best interests by unreasonably or irresponsibly selecting a suitable placement—all while giving deference to the Department's decision." And although the Department agreed it does not have *absolute* power in directing the child's placement, its actions say otherwise. So, if the Department does not have absolute power and the juvenile court could reject the placement decision, should not the review process allow for a decision with the least intrusive impact on a child? We should not be so concerned about power when on the other end of the balancing test is a child's welfare.

So, because we see fit to resolve this moot issue, I weigh in and disagree with the majority. We can all agree that the best interest of the child is the central concern of our citizens, thus, our juvenile statutes should follow that theme. "The welfare and best interests of the children are paramount." *In re J.R.H.*, 358 N.W.2d 311, 317 (Iowa 1984). And as the majority explains, the juvenile justice system requires a sharing of powers between the executive and judicial branch—so if the

court's focus is on the child's best interests, the Department's should be too. *See In re K.C.*, 660 N.W.2d 29, 34–35 (Iowa 2003) ("The juvenile justice system is one area in which we see a sharing of powers between the executive and judicial branches."). All of this is central to how we resolve this question.

First, I have no criticism of the description of the statutory process as described by the majority. But, when we arrive at the juncture in the road where the Department's placement decision is "*subject* to court review at the request of an interested party," we part ways. Iowa Code § 232.102(1)(b)(2) (2024) (emphasis added). I wholeheartedly agree with this conclusion of my colleagues: "For 'review' to carry meaning, and for the burden on the opposing party to come into play, the juvenile court must be able to review the placement and, should it find the Department unreasonably or irresponsibly failed to discharge its duties in selecting the placement, reject the Department's selection." Still, as I asked at the oral argument over this issue, what is the *process* defined in the statute that directs our review. Clearly the statute contemplates a process. But, as far as I can see, the timing of that process is not clearly delineated in the statute. And my colleagues writing for the majority have not helped me with that concern.

As the majority acknowledge, chapter 232 contemplates a situation where a juvenile court can reject the Department's placement decision if it is shown that the Department is acting contrary to the child's best interests by unreasonably or irresponsibly discharging its duties in selecting a placement. *See id.* So, think about the ramifications for a child if our interpretation of the interplay of our statutes means that nothing prevents the child's placement from being changed before the juvenile court can review the Department's decision. The child will have already

been moved from the home they know when the court gets the chance to consider whether the Department acted contrary to the child's best interests and unreasonably and irresponsibly discharged its duties in selecting the new placement. If the court finds against the Department, then the child will be moved again. And while I assume that in many cases the high hurdle to prove this standard cannot be reached, if it is, should we want the child to suffer the ramifications of that poor decision? The Department is not infallible, nor is its power absolute; and neither is the court's. That is why the process matters, and that is why the primary focus is the child. Likewise, there are other considerations here that work against moving the child to a new placement before the best-interests hearing.[9] I approach this question with those considerations and priorities in mind.

I agree that the Department and the juvenile court consider one of the priorities in placement to have siblings together, but as was the case here, the oldest sibling (born in 2015) was not placed with the younger siblings (born in 2017 and 2019). And the sibling at issue here, born in 2022, had never lived with any of the siblings during her first eighteen months—when the Department decided to make the change. What makes this priority work effectively in most cases is the collaboration between the court, the social workers, and other professionals involved with the family in crafting the best structure for the specific child's future

---

[9] The attorney and guardian ad litem (GAL) for the child pointed out that when the decision to change the child's placement was first raised, the juvenile court had reopened the termination proceedings to allow the mother to show what progress had been made. Further, it was noted that the change in placement could have negatively impacted the chance for the mother to show her progress if the child was now traumatized by a completely new placement.

success. While placing siblings together is often the right path forward, there can be good reasons that prevent a single home for all siblings from being in a child's best interests—just like was found here with the oldest sibling. And, I reference this background only to show that the priority was not acted upon until late in the process.

In reading the applicable statute here, the legislature stated in section 232.102(1)(b)(1) that if the court placed the child in the custody of the Department, "the [D]epartment shall have the authority to *select* the specific person or facility within that category for placement, *subject to court review at the request of an interested party.*" (Emphasis added.) The statute continues that while "[t]he court shall give deference to the [D]epartment's decision for placement of a child," the interested party opposed to the decision has "the burden to prove the [D]epartment failed to act in the child's best interests by unreasonably or irresponsibly failing to discharge its duties in *selecting* a suitable placement for the child." *Id.* § 232.102(1)(b)(2) (emphasis added). The statute presumes that the court and all interested parties are alerted to any possible change in placement.

Some history is helpful. Before the child at issue here was born, the custody of her other siblings was transferred to the Department as of their removal in April 2022. The child was born in September 2022. A month after that birth, she was placed in a foster home where she has remained during the entirety of these proceedings—over eighteen months. The oldest sibling remained in the care of a relative, but the middle two siblings were placed in several foster homes. The three youngest children have never lived together. In the removal order in October 2022, no mention was made of any effort by the Department to find a

placement for the three youngest children involved, other than to confirm that temporary legal custody of the child was placed with the Department for foster care.  In December 2022, the child's attorney and GAL indicated "efforts are not being made to place the siblings together."  An earlier effort by the Department to place all three children together was blocked when the child's attorney and GAL discovered the home had no electricity or running water, telephones were not allowed, and daily repentance was required.  All the while, the child has remained with the foster family that has cared for her since she was one month old.

After the termination hearing in December 2023, while the decision was pending, the mother moved to reopen the record arguing she had made additional progress the court should consider.  The juvenile court granted the motion and at the March 2024 scheduling conference for the hearing, the juvenile court and interested parties, including the child's attorney and GAL, learned that the Department had selected a new placement for the child—the foster family where her siblings had just been placed as of January 2024.  In its March 21, 2024 order reopening the termination trial and setting a hearing, the juvenile court also ordered the Department to not move the child from her foster home and that the issue of the "placement/guardianship will also be considered at the above date/time."  In effect, the court set the placement selection for hearing.  Yet, in its motion to reconsider, the Department stated, "Without a record of the proceeding and without hearing any evidence, the Court issued an order prohibiting the Department from moving [the child] from her current foster home 'without a specific court order identify[ing] the emergency reasons.'"  (Citation omitted.)  And in the hearing on the motion to reconsider, the Department argued the court did not have authority

to unilaterally prohibit the physical movement of the child without a hearing. Then this exchange between the Department and the juvenile court occurred:

> THE DEPARTMENT: . . . And if we want to have an evidentiary hearing as to—to make a best interest determination, what concerns me is it appears that the [GAL] makes a motion and the Court rules, and there was no evidence before it on that topic. No one was given a reasonable opportunity to be heard.
> THE COURT: Isn't it in a different structure, though, where all I am is saying before you move her, there needs to be an evidentiary hearing? I didn't preclude the move, I just said in her best interest, we needed to have that type of information available before the Court. How does that comport with your argument?

But the Department was both right and wrong here. First, it was wrong that there was no evidence on the topic because the child's attorney and GAL offered a letter from the child's medical provider that confirmed, in part:

> Changing [the child's] environment now could cause behavioral challenges, attachment difficulties, and long-term effects like aggression, academic difficulties, relationship problems, depression, and anxiety.
> [The child] is an "early stabilizer" because she was placed in foster care soon after birth, which means she is more likely to have normal baseline behavior and less trauma than children placed in foster care at a later age. Therefore, stability is essential for [the child]. She is already at risk for behavioral and academic problems due to methamphetamine exposure while in utero, and removing her from her current placement could make these issues worse.

And the Department got it right that a hearing with evidence was required—but a hearing was set, it is just that the Department refused to attend that hearing and instead, filed a petition for writ of certiorari, divesting the juvenile court of jurisdiction. Again I ask, what is the *process*?

In my view, the legislature, our courts, and the Department should follow the process the statute implies. One, while the Department has authority to *select* a placement after a dispositional hearing and after custody is transferred to the

Department under section 232.102(1)(b)(1), the language of the statute indicates that the *selection* is "subject to court review at the request of an interested party." From those words, the statute recognizes that court review is required if the request is made to question the *selection* made by the Department. And, in the court's review of the *selection,* the interested party must show "the Department failed to act in the child's best interests by unreasonably or irresponsibly failing to discharge its duties in *selecting* a suitable placement for the child." *Id.* § 232.102(1)(b)(2) (emphasis added). The statute provides for the court to review the Department's discharge of duties in "selecting." The court is empowered to review "the act or process of selecting"—it is not required to stand by until the selection has been effectuated and the child's placement actually changed. *Selection,* Merriam-Webster, https://perma.cc/KE2V-RENR; *see In re H.W.*, 961 N.W.2d 138, 142–43 (Iowa Ct. App. 2021) (noting that when words are not defined in a statute we assign them their common and ordinary meaning).

And in that light, the statutory language presumes that all interested parties would have notice of any *selection,* thus giving those parties the opportunity to meet their burden of proof to challenge the placement *selection.* While the statute does not say that the child cannot be removed until after the hearing, the legislature's rule of construction of chapter 232 requires that order in the process in my view. *See* Iowa Code § 232.1; *see also State v. Schiebout*, 944 N.W.2d 666, 670 (Iowa 2020) ("Interpreting a statute requires us to assess it in its entirety to ensure our interpretation is harmonious with the statute as a whole rather than assessing isolated words or phrases." (citation omitted)). The legislature requires us to "liberally construe[] [statutes in chapter 232] to the end that each child under

the jurisdiction of the court shall receive, preferably in the child's own home, the care, guidance and control that will *best serve the child's welfare* and the best interest of the state." Iowa Code § 232.1 (emphasis added); *see H.W.*, 961 N.W.2d at 143–44 (confirming we "honor the legislative directive in section 232.1 to construe chapter 232 liberally to best serve the child's welfare" and construing the statute more broadly to provide "greater protection for children" (cleaned up)). All of this leads me to what is most important—our helpless citizens. How can we say that the *process* allows the change in placement to occur if an interested party has a statutory obligation to show that the Department has failed to act in the child's best interests by unreasonably or irresponsibly failing to discharge its duty in *selecting* a suitable placement? With the best interests of the child in mind, I can think of no process that would require us to allow harm to occur before the court is allowed to act. *Cf. In re L.L.*, 459 N.W.2d 489, 494 (Iowa 1990) (recognizing other statutes in chapter 232 "are designed to prevent probable harm to the child and do not require delay until after harm has occurred"). Then the process is about control and not the child.

I would annul the writ.